COMMONWEALTH of Pennsylvania, Appellee

v.

Benjamin WASHINGTON, Appellant.

Superior Court of Pennsylvania.

Argued March 28, 2012.

Filed Aug. 27, 2012.

---

Brandon P. Ging, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, and Amy E. Constantine, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before DONOHUE, J., LAZARUS, J., and OTT, J.

OPINION BY OTT, J.:

Benjamin Washington appeals from the judgment of sentence entered against him following his conviction on multiple counts of possession with intent to deliver (heroin and cocaine) and possession of controlled substances (heroin and cocaine) and a misdemeanor charge of possession of a small amount of marijuana.[1] Washington was sentenced to three to fifteen years' incarceration. On appeal he claims: (1) the trial court erred in failing to suppress evidence obtained without reasonable suspicion and (2) that his sentence is illegal due to the failure to provide him notice with intent to invoke a mandatory minimum sentence. After a thorough review of the submissions by the parties, official record, and relevant law, we agree that the evidence was obtained without the requisite reasonable suspicion. Therefore, the trial court erred in failing to suppress the evidence. We reverse the order of the suppression court and vacate the judgment of sentence.

---

1. 35 P.S. §§ 780–113(a)(30), 780–113(a)(16),     and 780–113(a)(16) respectively.

■■ When reviewing the denial of a motion to suppress evidence, we examine "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole." *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010). We then determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Id.* Our review of the application of the law to the facts is plenary. *Id.*

At the suppression hearing, the trial court denied the motion and made the following findings of fact and conclusions of law from the bench:

Police officers arrived. Before they arrived, the defendant flees the scene unprovoked, and as the officer is following him in a parallel fashion, the defendant throws over the fence what appears to be a plastic baggie consistent with items that one would use to store narcotics. The officer observed this, and then the officer also observed the defendant as he walked toward the police officer after the officer had identified himself as a police officer and instructed the defendant to stop, and as the defendant continued to approach the police officer, ignoring the officer's commands, he discarded a box which contained Ice Breakers, and the defendant got 15 feet of the officer, who had to draw his gun, and the defendant was finally detained and arrested.

I find that there is sufficient probable cause to support a claim that the defendant was in possession of illegal narcotics. I think the standard, and I may be wrong, is probable cause, not reasonable suspicion. It's clear you have reasonable suspicion because of the fact that you have unprovoked flight in a high-crime area, and the officers didn't have the opportunity to identify themselves or produce badges with respect to this defendant until the first opportunity, and they did what they needed to do.

N.T. Suppression Hearing, 6/7/2010, at 27–28.[2]

The suppression judge amplified his reasoning in its Pa.R.A.P. 1925(a) opinion, stating:

[Washington] first rests this claim on the alleged lack of either reasonable suspicion or probable cause by the officers in detaining and searching his person. In most instances, in order to establish a reasonable suspicion of criminal activity, police must have specific reasonable inferences which they are entitled to draw from the facts in light of their experience. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 [20 L.Ed.2d 889] (1968). However, in a high crime area, unprovoked flight is sufficient to create reasonable suspicion so as to justify *Terry* stop by police officers. *Commonwealth v. Brown*, 2006 Pa.Super. 177, 904 A.2d 925 (2006). Moreover, the stopping and pat down of a defendant under such circumstances is not considered a violation of the 4th Amendment, nor is the evidence seized subject to suppression. *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Here, [Washington] voluntarily ran from the unmarked police officers in an area that was testified to be a high-crime area by the same officers during trial. In fact, the officers were at the residence on Breker Street because of a

**2.** The Suppression Hearing took place only on June 7, 2010. All citations to the Suppression Hearing are from that date.

report of shots being fired at the same location a few days beforehand. Therefore, a reasonable suspicion was created. Trial Court Opinion, 7/20/11, at 3.

Washington claims that as a matter of law, the facts testified to by the detectives did not provide an adequate statement of either reasonable suspicion or probable cause of criminal activity to justify the initial police chase. As result of the improper chase, the evidence was obtained by forced abandonment.

▮ *Commonwealth v. Brown,* 904 A.2d 925 (Pa.Super.2006), upon which the trial court relied, sets forth the applicable standards of law for this matter. In *Brown,* a panel of our Court stated,

> Consistent with *Jefferson* and *D.M. II,* it is clear that unprovoked flight in a high crime area establish a reasonable suspicion to believe that criminal activity is afoot to allow for a *Terry* stop. To determine whether the police have reasonable suspicion, the totality of the circumstances must be examined.

*Brown,* 904 A.2d at 930.

*Jefferson* and *D.M. II*[3] are prior cases in which the facts clearly show the defendant fled from individuals who were recognizable as police. In *Jefferson,* the defendant and another man, who were in an area known for drug sales and violence, fled when they saw a marked police vehicle approach. In *D.M. II,* the defendant, who matched a description broadcast over police radio of a man with a gun, was asked by the police to come over to the police car. Instead, D.M. fled.

In *Brown,* the police car involved was an unmarked vehicle. Brown was observed loitering in a high crime area, and had been "sneaking" around in apparent response to a marked patrol car passing by. The police officer in the unmarked car got out of his car and ordered Brown to stop. The officer was wearing a black tee shirt that had the word "police" written in three or four inch high letters across the front. Although the officer could not recall if he verbally identified himself as a police officer, his clothing clearly identified him as such. Nonetheless, Brown fled.

In *Illinois v. Wardlow, supra,* the United States Supreme Court speaks of "unprovoked flight upon noticing the police" in a high crime area. *Wardlow,* 528 U.S. at 124, 120 S.Ct. 673. Additional language in *Wardlow* also supports the conclusion that the suspect must know he is running from law enforcement before a reasonable suspicion can attach. "Our cases had recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* However, nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence.

The common elements between *Wardlow, Jefferson, D.M. II,* and *Brown* are the incident took place in a high crime area and the suspect fled upon being confronted by the police or recognizing police presence in the immediate area.

▮ The facts in the instant matter, as testified to by the police witnesses and as determined by the suppression/trial court, are missing the necessary element that Washington knew he was running from the

---

**3.** *Commonwealth v. Jefferson,* 853 A.2d 404 (Pa.Super.2004); *In the Interest of D.M.,* 566 Pa. 445, 781 A.2d 1161 (2001). It is referred to as *D.M. II* because this case was decided on remand from the United States Supreme Court.

police.[4]

At the suppression hearing, the trial judge stated, "Police officers arrived. **Before they arrived,** the defendant flees the scene unprovoked ..." N.T. Suppression Hearing, 6/7/2010, at 27 (emphasis added). This finding, that Washington left the scene before the police arrived, comports with the evidence given by the police.

Detective Goob testified, "As we started to pull closer to the group, the defendant, Mr. Washington, started to run towards the rear of 2813 Breker Street." N.T. Suppression Hearing, 6/7/2010, at 6. During cross-examination, Detective Goob testified the car was two houses away from the group when Washington started to run. *Id.* at 14. Detective Goob immediately got out of the car and ran after Washington. *Id.* Moreover, there was no testimony that Washington had been looking in the direction of the unmarked car before he ran.

Further, Detective Goob did not identify himself or make contact with Washington when he got out of the car because Washington had already left the scene. *Id.* at 15. Therefore, even though Detective Goob had his badge around his neck when he got out of the car, *id.,* that fact cannot be used to demonstrate Washington's knowledge, because Washington was not present.

The testimony by Detective Goob and the finding by the trial judge are both missing the crucial element that Washington was knowingly running from the police. Without this element, there is no nexus between running and a reasonable suspicion of criminal activity. Because of

this missing nexus, the suppression court erred as a matter of law in favorably comparing the instant matter to *Brown.* Hence, the evidence should have been suppressed and was improperly admitted. Without the physical evidence, there is no support for Washington's judgment of sentence.

Given our determination of the suppression issue, the sentencing issue is moot.

Judgment of sentence vacated.

---

4. Not only is this crucial element lacking, the evidence also fails to demonstrate Washington ran in response to the approach of the car. Without some indication that Washington was at least aware of the approaching unmarked car, the argument he fled in response to the approach of the car is a demonstration of the logical fallacy of *post hoc ergo propter hoc* (it follows therefore it was caused by). We do not believe that a reasonable suspicion or reasonable inference can be properly based upon a logical fallacy.