J-A26025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID EMANUEL COLLINS, JR. | |
| Appellee | No. 2248 MDA 2013 |

Appeal from the Order Entered December 2, 2013
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000144-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TIMOTHY D. EILAND | |
| Appellee | No. 88 MDA 2014 |

Appeal from the Order Entered January 9, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000341-2013

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 16, 2014**

In this consolidated appeal, the Commonwealth challenges the December 2, 2013 order granting Appellee, David Emanuel Collins, Jr.'s (Collins), motion to reconsider and suppressing all physical evidence from a December 2012 traffic stop and the January 9, 2014 order granting Appellee, Timothy D. Eiland's (Eiland), motion to suppress based on the

same December 2012 traffic stop.[1]  After careful review, we reverse and remand for proceedings in accordance with this memorandum.

We summarize the relevant undisputed facts and procedural history of these cases as follows.  On December 3, 2012, at 2:11 p.m., a 911 dispatch announced a robbery had just occurred at M&T Bank, located at 2001 West Fourth Street in Williamsport, Pennsylvania.  The initial dispatch described the suspect as a black male, six feet tall, wearing a dark sweatshirt and a ski mask, running west away from the bank.  N.T., 5/17/13, at 18, 24, 27.  The description was updated to include that the suspect was in his twenties, had a thin build, was wearing white gloves and carrying a grey bag.  *Id.* at 27, 35, 42.  The height of the suspect was described as 5'7" to 5'10".  *Id.* at 27.

Sergeant Christopher Kriner, wearing plain clothes, responded to the dispatch and stationed himself at the intersection of Funston Avenue and West Fourth Street, across the street from the bank, in an unmarked Ford Crown Victoria police car.  *Id.* at 19, 22, 40-41.  At 2:24 p.m., Sergeant Kriner observed a white Chrysler 300M, with a Tennessee license plate, driving east on West Fourth Street, passing the bank.  *Id.* at 20-21.  He observed three black males in the vehicle, appearing to be in their twenties, and wearing dark colored clothing.  *Id.* at 21, 24.  As the car passed

_____

[1] We have jurisdiction to address this interlocutory appeal because the Commonwealth has certified that the order substantially handicaps and terminates its prosecution.  *See* Pa.R.A.P. 311(d).

between the bank and Sergeant Kriner, the backseat passenger ducked down. *Id.* at 23. At approximately 2:28 p.m., after determining the vehicle was a rental car, Sergeant Kriner initiated a traffic stop. *Id.* at 24-25, 41, 45.

Immediately upon making contact with the vehicle, Sergeant Kriner detected a strong odor of marijuana, and the occupants were ultimately searched and found to be in possession of contraband.[2] The Commonwealth charged both Collins and Eiland with numerous counts of possession with intent to deliver a controlled substance, possession of a controlled substance by person not registered, possession of drug paraphernalia, criminal conspiracy, receiving stolen property, possession of firearm prohibited, and firearms not to be carried without a license.[3] Additionally, the Commonwealth charged Collins with one count of possession of controlled

---

[2] Specifically, Collins was taken into custody on an outstanding assault warrant from Philadelphia. A search incident to arrest revealed Collins was in possession of a small plastic bag containing marijuana. At the prison, Collins discarded a plastic grocery bag containing 93 zip lock bags with heroin. Eiland was found to be in possession of $7,285.00. A search of the vehicle recovered two 0.40 semi-automatic handguns, one of which had been reported stolen, approximately 1,200 small zip lock bags containing heroin wrapped in blue glassine packets, three bags containing loose heroin, 187 small zip lock bags containing cocaine, and a bag of crack cocaine. There was also paraphernalia recovered including rubber bands, unused blue glassine packets, unused small zip lock bags, a scale, and a mixer.

[3] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32), 18 Pa.C.S.A. §§ 903(c), 3925(a), 6105(a)(1), and 6106(a)(1), respectively.

substance contraband by inmate prohibited and possession of a small amount of marijuana for personal use.[4]

On March 15, 2013, Collins filed a motion to suppress all evidence from the vehicle stop, alleging Sergeant Kriner lacked reasonable suspicion to effectuate the stop. Following a hearing on May 17, 2013, both parties filed briefs for the trial court to consider. Thereafter, on July 29, 2013, the trial court filed an opinion denying Collins' motion to suppress. Collins filed a motion to reconsider on August 29, 2013, which was argued on September 25, 2013. On October 17, 2013, while the decision on Collins' motion to reconsider was pending, Collins' and Eiland's cases were consolidated for trial. The court issued an opinion and order on December 2, 2013 granting Collins' motion for reconsideration and suppressing all physical evidence resulting from the vehicle stop. Eiland then filed a motion to suppress on December 23, 2013. The trial court filed an order, relying on the opinion and order of December 2, 2013 on Collins' motion to reconsider, and

---

[4] 18 Pa.C.S.A. §§ 5123(a)(2) and 780-113(a)(31)(i), respectively.

suppressed all evidence on January 9, 2014.[5]  The Commonwealth timely appealed.[6]

On appeal, the Commonwealth raises the following issues for our review.

> I.  Whether the trial court erred by misapplying the law in granting Appellee's [Collins'] [m]otion for [r]econsideration?
>
> I[I.] Whether the trial court erred by granting Appellee's [Eliand's] [m]otion for [e]ntry of an [o]rder of [s]uppression, which, relied on the erroneous factual findings and legal conclusions of Judge Lovecchio's December 2, 2013 Opinion and Order?

Commonwealth's Brief at 9.

---

[5] The December 2, 2013 order suppressing the evidence in Collins' case was issued by Judge Marc Lovecchio.  Judge Richard Gray was assigned the motion to suppress, filed on behalf of Eiland.  Because the two cases were consolidated for trial and involved the same vehicle stop, Judge Gray applied the doctrine of coordinate jurisdiction in suppressing the evidence.  **See** Trial Court Opinion, 3/10/14, at 5-8.

[6] The Commonwealth filed its notice of appeal from the order in Collins' case on December 18, 2013.  The Commonwealth mistakenly appealed from the order of December 16, 2013, which denied the Commonwealth's motion for reconsideration.  Pursuant to Pennsylvania Rule of Criminal Procedure 1926(b)(2), the Commonwealth has filed a stipulation of the correct date in the trial court and a copy of the stipulation has been certified and transmitted as a supplemental record.  Additionally, the Commonwealth filed its notice of appeal from the order in Eiland's case on January 13, 2014.  On April 4, 2014, the appeals were consolidated by this Court.  **See** Pa.R.A.P. 513 (permitting consolidation of appeals where the same question is involved in two or more appeals in different cases).  Finally, the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

Our review of a trial court's grant of a motion to suppress is well-established.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (internal citations omitted). "Our review of the application of the law to the facts is plenary." *Commonwealth v. Washington*, 51 A.3d 895, 897 (Pa. Super. 2012) (citation omitted).

In the instant case, the Commonwealth argues that the trial court misapplied the law regarding Collins' motion to suppress when it concluded that the vehicle stop was not supported by reasonable suspicion, and by extension, that the adoption of that conclusion in Eiland's case was also error. Commonwealth Brief at 15-39. Appellees counter that the totality of the circumstances did not give rise to reasonable suspicion that one of the occupants of the vehicle was involved in the robbery, rendering the investigatory detention unlawful and the suppression proper. Collins' Brief at 5; *see also* Eiland's Brief at 8.

The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. The Pennsylvania Constitution also protects this interest by ensuring, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8. It is firmly established that "an investigative detention must be supported by reasonable suspicion[.]" *Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (quotation marks and citation omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014). In order to be constitutional, "an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion[.]" *Id.*

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. In assessing the totality of the circumstances, **a court must give weight to the inferences that a police officer may draw through training and experience.** Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Davis*, ---A.3d---, 2014 WL 5140282, *3 (Pa. Super. 2014) (emphasis added).

With these principles in mind, we turn to the merits of the Commonwealth's claim. In challenging the December 2, 2013 order, the Commonwealth contends the trial court's analysis is flawed because Collins' physical description matched the description of the robbery suspect closely enough to permit an investigatory detention, the trial court erroneously weighed the testimony in light of its own experience rather than in light of Sergeant Kriner's training and experience, and the trial court improperly applied this Court's decision in *Washington*. Commonwealth's Brief at 17, 26, 28. Because the trial court's decision to suppress the evidence relied on our decision in *Washington*, we will address this argument first. *See* Trial Court Opinion, 12/2/13, at 3-4; Trial Court Opinion, 3/5/14, at 4.

In *Washington*, police were traveling in an unmarked car in a high crime area. *Washington, supra* at 899. Testimony revealed the police car was approaching a group of individuals two houses away when the suspect fled, but there was no indication that the suspect looked in the direction of the unmarked police car before he ran. *Id.*

The trial court in *Washington* found that a determination of reasonable suspicion was "clear" because there was unprovoked flight in a high crime area. *See id.* at 897. In reversing the trial court's finding, this Court concluded that flight in a high crime area does not justify reasonable

- 8 -

suspicion when the suspect's flight was not in response to police presence or confrontation. *Id.* at 898-899, *discussing **Commonwealth v. Jefferson***, 853 A.2d 404 (Pa. Super. 2004); ***In the Interest of D.M.***, 781 A.2d 1161 (2001); and ***Illinois v. Wardlow***, 528 U.S. 119 (2000) (concluding the necessary element to support reasonable suspicion in a high crime area was the suspect fleeing in response to police presence). *Id.* "[N]ervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence." *Id.* at 898.[7]

Instantly, the Commonwealth argues ***Washington*** is not controlling because "there are many strong indications that Collins was aware of a police presence and was responding." Commonwealth Brief at 31-32. In the alternative, the Commonwealth argues the evasive movement by Collins is relevant to the reasonable suspicion analysis even if Collins was not aware Sergeant Kriner was a police officer. *Id.* at 33. We agree that ***Washington*** is distinguishable.

***Washington*** involved flight in a high crime area where police presence was predicated on a report of gunshots being fired at the location

---

[7] This Court has since discussed the relevancy of unprovoked flight in response to police presence in an area that is not designated as "high crime" under a reasonable suspicion standard in ***Commonwealth v. Walls***, 53 A.3d 889, 894 (Pa. Super. 2012) (concluding unprovoked flight in an area not described as high crime, combined with suspect's proximity to the location and description given in the flash gives rise to a reasonable suspicion of criminal activity).

days before the encounter at issue. In such a case, a defendant's knowledge of the presence of police is a necessary prerequisite to reasonable suspicion of criminal activity afoot based on such flight. Instantly, the evasive behavior by Collins occurred near the site of, and within only a few minutes of, a known bank robbery, where the presence of police and witnesses would likely be surmised by a guilty party. We conclude, in these circumstances, Collins' act of ducking while the vehicle passed the bank is relevant to a finding of reasonable suspicion. For the reasons set forth below, we agree the trial court legally erred when it failed to consider Collins' evasive movements under the totality of the circumstances.

At the suppression hearing Sergeant Kriner, testified for the Commonwealth. Sergeant Kriner testified he has been a police officer for approximately 13 years, he is responsible for supervising criminal investigations, and he has investigated cases involving robberies, drug incidents, sexual assaults, and thefts. N.T., 5/17/2013, at 9-10. During the Commonwealth's direct examination, Sergeant Kriner explained his decision to initiate the vehicle stop as follows.

Q. What drew your attention to the vehicle?

A. … [T]he fact that the back seat passenger had ducked down, and the occupants, they fit the physical description of the bank robber.

Q. What do you mean he ducked down?

- 10 -

A. He literally ducked down, when he passed by me and the bank he ducked down so I couldn't see him.

Q. All right so what – did you follow the vehicle?

A. Yes.

Q. All right. When you first saw the vehicle driving, where was it in relation to the bank? How far away from the bank, or how close to the bank?

A. It -- it was close. The bank was within sight of me, a stone's throw away and it -- it went between where I was parked and the bank. They were both within the same block.

…

Q. Okay. And … in your own words, why did you stop this vehicle?

A. Because I thought they were the bank robbers.

N.T., 5/17/2013, at 23-25. Sergeant Kriner also testified the vehicle had a Tennessee license plate. *Id.* at 24. Testimony further revealed his decision to stop the vehicle was made after he determined the vehicle was a rental and with consideration given to the description of the suspect, the passenger's evasive movement, and the direction the vehicle was traveling in relation to where the suspect fled. *Id.* at 33, 38.

At the hearing on Collins' motion to reconsider, no new evidence was presented, but counsel for Collins advanced the argument that this Court's decision in *Washington* effectively rendered Sergeant Kriner's observation of Collins ducking down irrelevant to his determination of reasonable suspicion because Sergeant Kriner's testimony did not establish Collins

- 11 -

ducked down in response to police presence. **See** N.T., 9/25/13, at 3-4. Indeed, in granting Collins' motion and suppressing the evidence, the trial court agreed, "[t]here is nothing in the record to indicate that [Collins] saw [Sergeant] Kriner or realized that he was a police officer." Trial Court Opinion, 12/2/2013, at 4. The trial court further found, "[w]hen 'ducking down' is removed from the equation, the portion of the description that [Collins] met was vague and general." **Id.** at 4-5. In its Rule 1925(a) opinion, the trial court observed that after reviewing our decision in **Washington**, the trial court's perception of other factors in the reasonable suspicion analysis changed. **See** Trial Court Opinion, 3/5/14, at 4. "Without any evidence that [Collins] saw [Sergeant] Kriner and realized he was a police officer, the direction of travel no longer represented flight from a crime scene, but simply a visitor leaving town." **Id.** For the reasons described above, we deem the trial court's application of the holding in **Washington** inapt, and we agree with the Commonwealth that the trial court's failure to consider the evasive movements of Collins, under the totality of the circumstances present in this case, was legal error.

The uncontradicted facts in the instant case reveal the vehicle was driving from the direction of the suspect's flight, and Collins ducked down as he passed between Sergeant Kriner's location and the location of the bank that had been robbed minutes before. As the trial court aptly noted, "[r]easonable suspicion … is based on the totality of the circumstances."

- 12 -

Trial Court Opinion, 3/5/14, at 6. We cannot agree, that under the totality of the circumstances in this case, traveling away from the bank "no longer represented flight from a crime scene" as the trial court suggests. **See id.** at 4. Rather, the totality of the circumstances in the instant case includes the observation of an out-of state vehicle traveling away from the precise location where a bank robbery occurred, with occupants matching the general physical description of the robbery suspect, one of whom ducked down upon passing the bank. **See generally** N.T., 5/17/13, at 39. In rejecting Sergeant Kriner's conclusion that Collins ducked down to avoid being seen by police, the trial court found, "[t]here is nothing in the record to show that [Collins] saw anyone to be hiding from." Trial Court Opinion, 3/5/14 at 4. The trial court further conjectured, "[Collins] simply could have been trying to retrieve something he dropped or lying down on the backseat to take a nap during the long drive back to Tennessee." **Id.** at 4-5. While these are possible innocent inferences, a combination of innocent facts, when viewed together, may warrant further police investigation. **See Davis, supra**. Further, regardless of police presence, the testimony established Collins was observed traveling from the **crime scene** and ducking down while passing the bank where the robbery occurred. Sergeant Kriner reasonably inferred this action was to avoid detection at the crime scene.

The Commonwealth also advances the argument that the trial judge improperly substituted his own professional experience in assessing the

circumstances described in Sergeant Kriner's testimony instead of objectively assessing the circumstances as viewed by a veteran police officer. **See** Commonwealth Brief at 27. In **Davis**, this Court, reversing a trial court's order granting suppression, held the trial court erred as a matter of law when it failed to appropriately consider the police officer's inferences, under the totality of the circumstances, in light of his training and experience. **Davis, supra** at *3. In reversing the trial court we observed, "[t]he incident ending in Appellee's arrest did not occur in a vacuum, and the facts of the incident did not occur in isolation." **Id.** In response to the trial court's alternative interpretation of the factors that gave rise to the police officer's reasonable suspicion, we noted "[p]otential innocent explanations for Appellee's conduct do not negate the reasonableness of [the police officer]'s reasonable suspicion …." **Id.**

At the suppression hearing, Sergeant Kriner also articulated the relevancy of the Tennessee rental vehicle in his determination of reasonable suspicion. "The vehicle had an out-of-state registration on it. I have known of incidences where banks were robbed by people from out-of-state. It happens I would say rather frequently, especially with serial bank robbers, they go from one state to another and rob banks." N.T., 5/17/13, at 41. Further, despite the suspect fleeing on foot, Sergeant Kriner explained, "[t]here's [sic] instances where people have been waiting in cars for bank robbers, so they'll run to the vehicle and someone will drive them away."

*Id.* at 42. The trial court unequivocally stated the testimony of Sergeant Kriner regarding the occurrence of bank robberies committed by persons from out-of-state was not considered in the original decision on the suppression motion because the trial court did not find it "particularly weighty." Trial Court Opinion, 12/2/13, at 4. The trial court further observed, "[a]lthough serial bank robberies may frequently involve out of state perpetrators, the court cannot recall in either **its experience** on the bench or in private practice of any bank robberies in Lycoming County that were committed by out-of-state offenders." *Id.* (emphasis added).

Accepting, as we must, the trial court's findings of fact that the evidence did not establish Collins was aware of a specific police officer's presence when he ducked down, the failure of the trial court to give weight to the inferences that Sergeant Kriner drew through his training and experience was an error of law. *See Hudson, supra*; *see Davis, supra.* In this case, Collins matched the description in age, race, and clothing, the vehicle was traveling in the direction from which the banker robber fled, minutes after the bank robbery was dispatched, and Sergeant Kriner considered the additional factor that the vehicle was a rental car from a different state. *See* N.T., 5/17/13, at 23-25, 33, 38. Each articulated factor did not occur in a vacuum, and Sergeant Kriner determined, in light of his training and experience, that there was reasonable suspicion the occupants were involved in the bank robbery. *See Davis supra*. Accordingly, we

conclude Sergeant Kriner had a reasonable and articulable suspicion that criminal activity was afoot. Concluding that it was error for the trial court to disregard the totality of the circumstances and fail to give weight to the inferences drawn in light of Sergeant Kriner's training and experience, we need not address whether the physical description of the suspect was sufficient alone to establish reasonable suspicion.

Based on the foregoing, we conclude that the trial court erred as a matter of law in its December 2, 2013 order when it granted Collins' motion to reconsider and suppressed the evidence derived from the traffic stop. Accordingly, because Eiland's motion to suppress adopted the findings of fact and conclusions of law of the December 2, 2013 order, we conclude the trial court erred as a matter of law in granting the January 9, 2014 order. Therefore, the trial court's orders of December 2, 2013 and January 9, 2014 are reversed, and the case is remanded for further proceedings, consistent with this memorandum.

Orders reversed.  Case remanded.  Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Jenkins files a concurring memorandum in which Judge Bowes joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2014

- 17 -