J-S46038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LIONEL ROBINSON, | : | |
| | : | |
| Appellee | : | No. 2618 EDA 2014 |

Appeal from the Order entered on August 7, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0003789-2013

BEFORE:  MUNDY, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 31, 2015**

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to suppress evidence filed by Lionel Robinson ("Robinson").  We reverse and remand for further proceedings.

The trial court set forth the relevant facts underlying this appeal as follows:

> On the afternoon of September 25, 2012[,] police officer Mike Walsh ["Officer Walsh"] and two partners were working [on routine patrol], [in] plainclothes, in an unmarked vehicle at or near the rear alleyway on 3000 B Street in the City of Philadelphia.[1]  [While seated in the front passenger seat of the parked vehicle,] Officer [Walsh] observed [Robinson] accept United States currency in exchange for small objects [] from [three] individuals at that location.  At th[e] same time as the observation, another male[,] co-defendant [Kalief] Johnson[ ("Johnson"),] who [was] with [] Robinson [in the alleyway,]

---

[1] We will hereinafter refer to the area surrounding the alleyway and B Street as "the arrest area."  As we discuss below, Officer Walsh testified that the arrest area is a known high drug crime area.

yell[ed] "cops." [Robinson] and [Johnson] then r[a]n to the rear of [an abandoned building located at] 3016 B Street, at which time the partners of Officer Walsh, []Officers [Steven] Hunter ["Officer Hunter"] and [Donald] Vandermay[,] pursue[d] [Robinson and Johnson] to the front of the [abandoned] building [and entered it after Robinson and Johnson]. Officer Walsh secure[d] the back of the building. Johnson [was] apprehended and arrested ....[2]

On cross[-]examination, [O]fficer Walsh state[d] that [t]here were six people in the alleyway when he was making his observations[,] and that [] Robinson took money from three [] individuals[,] but none of the people were identified or arrested. [Officer Walsh] could not say what the objects were that he was referring to as being exchanged[.]

[O]fficer Hunter testified that he was on duty with Officer Walsh [on the date in question, riding in the back seat of the unmarked police vehicle]. [Officer Hunter] state[d] that [after Robinson had fled into the abandoned building, Officer Hunter] followed [Robinson] … and found him in [a] second floor bedroom[. Officer Hunter testified that upon entering the bedroom, he discovered that "[Robinson] lost a bundle of 15 … clear, Ziploc packets containing [a] blue-glassin[e] insert, containing heroin stamped 'cartel' …." N.T., 8/7/14, at 20. Officer Hunter also discovered $189 in cash on Robinson's person.] On cross[-]examination, Officer Hunter state[d] that he did not see any drug transactions[,] and that he was with [O]fficer Walsh in the unmarked police vehicle. They were driving down the street and then they all jumped out of the car.

Trial Court Opinion, 1/22/15, at 2-3 (footnotes added; citations to record omitted).

Following Robinson's arrest, the Commonwealth charged him with possession of a controlled substance with intent to deliver, possession of a

---

[2] Johnson had attempted to flee the police by exiting a second story window, and hanging on electrical wires. Johnson fell to the ground, and simultaneously discarded seven baggies of heroin bearing the stamp "cartel."

controlled substance, and criminal conspiracy. Robinson subsequently filed a Motion to suppress the evidence seized by police.[3] The trial court conducted a suppression hearing, at which both Officers Walsh and Hunter testified. Robinson did not present any witnesses. At the close of the hearing, the trial court granted Robinson's suppression Motion, concluding that the evidence was inadmissible as being the product of an unlawful police chase and "forced abandonment."

The Commonwealth timely filed a Notice of Appeal.[4] The trial court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed a Concise Statement, after which the trial court issued its Pa.R.A.P. 1925(a) Opinion.

The Commonwealth presents the following issue for our review:

> Where an experienced officer saw [Robinson] make three hand-to-hand transactions in which he provided small objects in exchange for currency[,] in a high drug crime area[,] and where, in response to his co-conspirator yelling "cops," [Robinson] ran into an abandoned property and discarded fifteen packets of heroin, did the [trial] court err in suppressing the drugs based on a theory of forced abandonment?

---

[3] We note that Robinson's Motion to suppress is not contained in the certified record, nor is it listed on the trial court's docket. However, the trial court stated in its Pa.R.A.P. 1925(a) Opinion that Robinson had filed a suppression Motion prior to the date scheduled for trial.

[4] In filing this interlocutory appeal, the Commonwealth complied with Pa.R.A.P. 311(d), which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

Brief for the Commonwealth at 4. Robinson did not file a brief on appeal.

This Court has summarized the proper scope and standard of review, when reviewing the grant of a suppression motion, as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Boyd**, 17 A.3d 1274, 1276 (Pa. Super. 2011) (citations omitted).

In its Rule 1925(a) Opinion, the trial court advanced the following rationale in support of its suppression ruling:

> ["]Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." **Commonwealth v. Tillman**, 423 Pa. Super. 343, 621 A.2d 148, 150 (1993)[.] ["]In considering whether the abandoned or relinquished property is admissible, our [S]upreme [C]ourt has held that initial illegality taints the seizure of the evidence because in such a situation it cannot be said that there was a voluntary abandonment or relinquishment of the evidence. No improper or unlawful act can be committed by the officers **prior** to the evidence being abandoned or relinquished.["] [**Commonwealth v.**] **Pizarro**, 723 A.2d [675,] 679 [(Pa. Super. 1998) (emphasis supplied by trial court; quotation marks, brackets and ellipses omitted).]
>
> When the record in this matter is reviewed, and both [O]fficer[] [Walsh's and Officer Hunter's] testimony is compared, it seems implausible that[,] on one hand, a travelling[,] unmarked car on routine patrol can stop, [and] release its

- 4 -

officers for a chase of potential defendants[,] while on the other hand, remain stopped for a surveillance of individuals engaged in drug dealing up an alleyway (for at least 3 transactions).  There is no identification of [the alleged drug] buyers and no description of other individuals associated with [Robinson].  … Accordingly, this [c]ourt properly granted [Robinson's] Motion to Suppress Evidence based upon forced abandonment.

Trial Court Opinion, 1/22/15, at 3-4 (some citations omitted).

The Commonwealth argues that the trial court's ruling concerning forced abandonment is erroneous, since the police had reasonable suspicion that Robinson was engaged in criminal activity, and therefore, had lawful authority to pursue him and seize the narcotics that he had abandoned.  Brief for the Commonwealth at 8 (citing **Commonwealth v. Williams**, 410 A.2d 835, 836 (Pa. Super. 1979) (stating that "[a]bandoned property may be obtained and used for evidentiary purposes by the police.  The evidence must be suppressed only if the abandonment has been coerced by unlawful police action.").  The Commonwealth asserts that the circumstances of the instant case are very similar to those presented in **Commonwealth v. Cook**, 735 A.2d 673 (Pa. 1999).  Brief for the Commonwealth at 9.  In **Cook**, police officers in an unmarked vehicle were patrolling a high crime area, when they observed the defendant engage in a suspected hand-to-hand drug transaction on a street corner.  **Id.** at 674.  The defendant fled on foot upon being approached by the police, and discarded items while running, including crack cocaine.  **Id.**  Our Supreme Court held that the defendant's flight in a high crime area, along with a police officer's

observation of suspicious hand-to-hand transactions, established reasonable suspicion, and the police thus lawfully pursued the defendant and seized the abandoned drugs. *Id.* at 677-78.

This Court set forth the law concerning reasonable suspicion, and seizure of a fleeing suspect who had abandoned property, as follows:

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop.
>
> Our [Pennsylvania S]upreme [C]ourt has interpreted [the] Article I, § 8 protection more broadly than the Fourth Amendment[,] and has found that a seizure occurs when an officer gives chase. Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. …
>
> In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Taggart*, 997 A.2d 1189, 1193 (Pa. Super. 2010) (citation and brackets omitted).

In the instant case, according to the Commonwealth, Officers Walsh and Hunter "would have been justified in pursuing [Robinson] based upon

his flight in a high crime area alone, even if Officer Walsh had not seen him engage in three suspicious transactions." Brief for the Commonwealth at 10. We agree.

In ***Illinois v. Wardlow***, 528 U.S. 119 (2000), the United States Supreme Court held that a police officer is justified in reasonably suspecting that an individual is involved in criminal activity where that individual (1) is present in a high crime area; and (2) engages in unprovoked, headlong flight after noticing the police. ***Id.*** at 124-25.[5] The Supreme Court ruled that the existence, in combination, of these two factors *alone* is sufficient to establish reasonable suspicion. ***Id.*** Our Pennsylvania Supreme Court subsequently recognized the significance of the ***Wardlow*** holding, stating that "it is evident that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a ***Terry***[6] stop under the Fourth Amendment." ***In re D.M. II***, 781 A.2d 1161, 1164 (Pa. 2001) (footnote added); ***see also id.*** at 1165 n.2 (applying ***Wardlow*** and declining to adopt

---

[5] In ***Wardlow***, a four-car police caravan was investigating drug activity in an area of Chicago known for heavy narcotics trafficking. ***Wardlow***, 528 U.S. at 121. One of the officers observed the defendant holding an opaque bag. ***Id.*** The officers did not observe any conduct suggesting that the defendant was in possession of contraband. ***See id.*** When the defendant saw the police, he immediately fled. ***Id.*** at 122. The police apprehended him, and during a pat-down search for weapons, recovered a gun. ***Id.*** The Supreme Court affirmed the denial of the defendant's motion to suppress, reversing the decisions to the contrary by the Illinois courts of appeal. ***Id.*** at 122-24.

[6] ***Terry v. Ohio***, 392 U.S. 1 (1968) (holding that police may stop and frisk a person where they have reasonable suspicion that criminal activity is afoot).

greater state constitutional rights).[7]  Later, this Court clarified that, in order for the holdings of *Wardlow* and *D.M. II* to apply, it must be established that "the suspect fled upon being confronted by the police or recognizing police presence in the immediate area."  *Commonwealth v. Washington*, 51 A.3d 895, 898 (Pa. Super. 2012); *see also id.* (stating that "the suspect must know he is running from law enforcement before a reasonable suspicion can attach.").

In the instant case, Officer Walsh testified at the suppression hearing that he had worked in the police district encompassing the arrest area for 12 years, and that the arrest area is a "high crime, high narcotics area."  N.T., 8/7/14, at 12.  Officer Walsh further stated that he had personal experience with the high rate of crime in the arrest area, having previously made "between 25 and 50 arrests" in the immediate area.  *Id.* at 11; *see also id.* (wherein Officer Walsh stated that he had received specialized training regarding the sale of narcotics in the City of Philadelphia).  Additionally, Robinson fled upon being alerted by Johnson to the presence of police at the scene.  *See id.* at 8, 17.  Accordingly, in determining whether these two factors, in conjunction, established reasonable suspicion under *Wardlow*

---

[7] Neither the Court in *D.M. II* nor the *Wardlow* Court distinguished between "unprovoked" and "provoked" flight.  It appears that their inclusion of the term unprovoked is merely superfluous.  Indeed, it is clear that it is flight *provoked* by a defendant's sighting of police that is the relevant factor, as it is a suspect's flight and attempted avoidance of police that increases the degree of suspicion of the suspect's involvement in criminal activity.

and its progeny, all that must be established is that Robinson knew that he was running from police, pursuant to **Washington, supra**.

We conclude that the circumstantial evidence establishes that Robinson knew that he was running from the police. Officer Walsh testified that when Johnson looked in the direction of the police, he yelled "cops," alerting Robinson and the other individuals in the alleyway to the police presence. N.T., 8/7/14, at 8, 17.[8] Immediately thereafter, Robinson and Johnson ran into the rear of the abandoned building at 3016 B Street. **Id.**

Accordingly, Robinson's flight from police in a high crime area, absent more (*i.e.*, even without Officer Walsh's observation of Robinson engaging in three suspicious hand-to-hand transactions), was sufficient to establish reasonable suspicion.[9] **See Wardlow, supra** (holding that the defendant's flight from police in a high crime area established reasonable suspicion, even where the police did not articulate any specific indications that the defendant possessed contraband); **see also Commonwealth v. Miller**, 876 A.2d 427, 430-31 (Pa. Super. 2005) (where the defendant was standing with a group other men on a street corner, and fled from police upon their approaching the group, holding that the defendant's presence in a high crime area,

---

[8] Though Officer Hunter did not testify to overhearing Johnson say "cops," Officer Hunter did not contradict Officer Walsh's testimony in this regard.

[9] Therefore, we need not address the trial court's determination in its Rule 1925(a) Opinion concerning (1) the discrepancies in the testimony of Officers Walsh and Hunter as to whether they saw the suspicious hand-to-hand transactions; and (2) the fact that none of the alleged drug buyers were identified. **See** Trial Court Opinion, 1/22/15, at 4.

coupled with his flight, was alone sufficient to establish reasonable suspicion); *see also id.* at 431 n.4 (observing that "[the defendant's] actions prior to his flight, whether lawful or unlawful, do not affect our holding.").

We therefore conclude that the trial court erred by granting Robinson's Motion to suppress. The totality of the circumstances demonstrate that police had reasonable suspicion to believe that Robinson was engaged in criminal activity when they began their pursuit of him following his flight in a high crime area. *See Wardlow, supra*.

Judgment of sentence reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015