J-A04001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE MOSLEY, | |
| Appellant | No. 222 EDA 2016 |

Appeal from the Judgment of Sentence December 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009149-2014

BEFORE:  SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED MARCH 31, 2017**

Appellant, George Mosley, appeals from the judgment of sentence entered on December 4, 2015, in the Court of Common Pleas of Philadelphia County.  We affirm.

The trial court made the following findings of fact in this case:

On June 26, 2014, at approximately 9:53 p.m., Philadelphia Police Officer Jason Kochmer was on routine patrol with his partner Officer Brian Hol[l]man[1] on the 2200 block of North Natrona Street in the City and County of Philadelphia, PA.  This is a high crime area.  In order to catch any individuals engaged in criminal activity off-guard, the officers were driving the wrong way on North Natrona Street.  Officer Kochmer observed three black males seated on the steps at 2218 North Natrona Street.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  Officer Brian Hollman indicated at the suppression hearing that the spelling of his last name is "Hollman."  N.T., 7/6/15, at 54.

As the officers' vehicle proceeded down the street, one of the males looked in the officers' direction, stood up, grabbed at a bulge on his waistband, ran into a house and shut the door. Officer Kochmer stopped his vehicle in front of the property. As soon as Officers Kochmer and Hol[l]man got out of the vehicle, [Appellant] made eye contact with Officer Kochmer and jumped up. He grabbed at the pocket of his cargo pants and tried to pull out something from his pocket. Officer Kochmer observed a handle of a firearm. [Appellant] then ran up onto the porch of the property and attempted to get inside. [Co-defendant Garrett Morgan ("Morgan")] also grabbed an enlarged bulge on the right side of his waistband and ran up onto the porch behind [Appellant] attempting to get inside the property. Officer Kochmer believed the bulge to be a firearm based on his experience. Officer Kochmer commanded [Appellant and Morgan] to stop. When [Appellant and Morgan] failed to comply, Officer Kochmer deployed his taser, hitting [Appellant and Morgan]. Both [Appellant and Morgan] fell to the ground. [Appellant] put up his hands, at which time Officer Kochmer observed a gun sticking out of the right pocket of his cargo shorts. [Appellant] was handcuffed. Officer Kochmer recovered the gun from [Appellant's] shorts and he was placed in the police vehicle. [Co-d]efendant Morgan continued to move around and struggle. The officers were eventually able to secure and handcuff him. When they stood [co-d]efendant Morgan up, a .44 revolver, 10 inches long, fell from his waistband. Officer Hol[l]man recovered the firearm. [Co-d]efendant Morgan was then placed in the police vehicle. When [Appellant] was removed from the police vehicle to be searched, police officers observed a clear sandwich baggie containing alleged narcotics underneath where [Appellant] had been sitting. The court found Police Officer Kochmer's and Police Officer Hol[l]man's testimony credible.

Trial Court Opinion, 6/30/16, at 2-3 (internal citations omitted).

The trial court summarized the procedural history of this case as

follows:

On July 13, 2015, prior to trial, [the trial court] denied the Motion to Suppress filed on behalf of [Appellant].[1] On July 20, 2015, following a waiver trial, [the trial court] found [Appellant] guilty of possession of firearms prohibited,[2] firearms not to be

- 2 -

carried without a license,[3] and carrying firearms on public streets in Philadelphia.[4] On December 4, 2015, [Appellant] was sentenced to an aggregate sentence of three and [one-]half to seven years of incarceration and seven years of probation to be served concurrent to incarceration.[5] On January 4, 2016, [Appellant's] motion for reconsideration of sentence was denied. On January 7, 2016, [Appellant] filed a timely notice of appeal.

> [1] The Motion to Suppress filed by [Appellant's] co-defendant, Garrett Morgan, was also denied on that date.
>
> [2] Pa.C.S. 18 § 6105(a)(1)
>
> [3] Pa.C.S. 18 § 6106(a)(1)
>
> [4] Pa.C.S. 18 § 6108
>
> [5] [Appellant] was sentenced to three and [one-]half to seven years of incarceration on the VUFA 6105 charge. He was sentenced to seven years of probation on the VUFA 6106 charge and five years of probation on the VUFA 6108 charge. Both sentences of probation are to run concurrent with confinement.

Trial Court Opinion, 6/30/16, at 1.

Appellant presents the following issue for our review:

Did not the lower court err by denying [A]ppellant's motion to suppress physical evidence where [A]ppellant was subjected to an illegal stop solely on the basis of his presence in a high crime area and the suspicious behavior of another in [A]ppellant's presence, and all of [A]ppellant's subsequent actions and the recovery of a firearm were tainted by that illegal stop?

Appellant's Brief at 3.

With respect to an appeal from the denial of a motion to suppress, our

Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Appellant argues that the trial court erred by denying his motion to suppress physical evidence that was obtained as the result of an illegal stop. Appellant's Brief at 11. Appellant claims that he was stopped solely on the basis of his presence in a high crime area and the suspicious behavior of another individual in Appellant's presence. *Id.* Appellant contends that he and his co-defendant were sitting outside a house on the night at issue, when an unidentified male stood up and touched a "bulge" in his clothes and went inside a house at the sight of the police. *Id.* Appellant maintains that he and his co-defendant remained seated when officers stopped in front of the house. *Id.* Appellant asserts that the officer exited his vehicle with his

- 4 -

taser pointed at the two males and yelled "stop," at which point Appellant and his co-defendant stood up. *Id.* at 11-12. Appellant claims that he did nothing more than touch the pocket of his cargo shorts. *Id.* at 12. After being told to "stop," both males attempted to gain entrance to the house but were unsuccessful and then detained. *Id.* Appellant contends that because the officer did not have reasonable suspicion that criminal activity was afoot, the stop of Appellant was an ulawful detention and the firearm ultimately recovered from Appellant was fruit of the unlawful detention and therefore must be suppressed. *Id.*

In addressing police detentions, this Court has explained:

"'Interaction' between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000). The three levels of interaction are: mere encounter, investigative detention, and custodial detention. *Id.*

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an

> investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id.* (internal citations and quotation marks omitted).

***Commonwealth v. Tam Thanh Nguyen***, 116 A.3d 657, 664 (Pa. Super. 2015).

> This Court has stated the following regarding reasonable suspicion:

> > [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the stop warrant a man of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa. Super. 2009) (internal citations and quotation marks omitted; alterations in original).

> Furthermore,

> > [t]he exclusionary rule provides that evidence obtained due to an unconstitutional search or seizure cannot be used against a defendant. The exclusionary rule also applies to any evidence discovered as a result of the original illegal police conduct; such evidence is termed "fruit of the poisonous tree."

***Commonwealth v. Williams***, 2 A.3d 611, 619 (Pa. Super. 2010).

We note that the version of events presented by Appellant in his brief differs from the testimony set forth by the officers at the suppression hearing. We further observe that the trial court found the officers' testimony to be credible. Trial Court Opinion, 6/3/13, at 3. The testimony at the suppression hearing established the following. Philadelphia Police Officer Joseph Kochmer testified that on June 26, 2014, around 9:53 p.m., he was on duty with Officer Brian Hollman. N.T., 7/6/15, at 8. They were assigned to the 22nd District, and were patrolling the 2200 block of North Natrona Street in Philadelphia. *Id.* Officer Kochmer testified that the 2200 block of North Natrona is a high-crime area, involving drugs and violence. *Id.* at 17-18. The two were patrolling in full uniform in a marked police vehicle. *Id.* at 9.

The officers proceeded northbound on 2200 Natrona Street. N.T., 7/6/15, at 9. Officer Kochmer testified that as they turned on the block "outside of 2218 Natrona, a black male stood up and grabbed at his right side of his hip, turned and attempted to walk into the residence at 2218." *Id.* When the officers pulled in front of the residence and stopped the car, the unidentified male took off running into the house. *Id.* at 10. When Officer Kochmer opened his door to get out and stop the unidentified male, Appellant and Morgan looked directly at Officer Kochmer and then jumped up. *Id.* at 10. In jumping up, Appellant grabbed at the pocket on the right pant leg of his cargo shorts. *Id.* Officer Kochmer explained that Morgan

"grabbed at a really large bulge on his right side, turned and attempted to flee into the house." *Id.* Appellant and Morgan attempted to run into the house, but were unable to gain access. *Id.* When Appellant and Morgan first attempted to flee, Officer Kochmer "took off and started running." *Id.* Officer Kochmer further testified that when Appellant and Morgan began to run, he ordered the two to stop. *Id.* at 11.

When Appellant reached the porch of the residence, he reached into his right pocket and was attempting to remove what Officer Kochmer suspected to be a firearm. *Id.* at 12, 15. At that point, Officer Kochmer was able to see the handle of the firearm in Appellant's pocket. *Id.* at 13. Officer Kochmer testified that based upon his experience as a police officer for six years, and his familiarity with firearms, he was able to determine that Appellant had a firearm in his pocket. *Id.* at 14. Upon Appellant's attempt to retrieve his firearm, Officer Kochmer deployed his taser. *Id.* at 15. The taser hit both Appellant and Morgan, and they fell to the ground. *Id.* at 15-16. While on the ground, Appellant put his hands up and Officer Kochmer could then see the firearm handle hanging out of Appellant's pocket. *Id.* at 16. A gun was also recovered from Morgan. *Id.* at 16.

Appellant and Morgan were placed in the patrol car. N.T., 7/6/15, at 19. When Appellant was taken out of the car, officers discovered a hand-tied sandwich bag containing drugs under the area where Appellant had been seated in the patrol car. *Id.* at 18-19.

Officer Brian Hollman also testified at the suppression hearing. N.T., 7/6/15, at 55. He testified that he and his partner, Officer Kochmer, were patrolling the 2200 block of North Natrona Street on June 26, 2014, at approximately 9:53 p.m. *Id.* at 55. They were in a marked vehicle and were dressed in full uniform. *Id.* at 55. While driving northbound on the 2200 block of Natrona Street, the officers observed three males sitting on the porch of 2218 Natrona. *Id.* at 56. As the officers approached, one of the males stood up and grabbed at the right side of his waistband, turned around and started moving toward the house. *Id.* at 56. Upon seeing this behavior, the officers stopped the vehicle as the male was running into the house. *Id.* at 56. When Officer Kochmer opened the patrol car door, the two remaining seated males, Appellant and Morgan, jumped up and Officer Hollman observed Appellant grab at the pocket on the right side of his cargo shorts. *Id.* at 57. Appellant turned and attempted to run into the house. *Id.* at 57. Because Officer Hollman was on the passenger side of the vehicle, he had to run around the car to get to Appellant and Morgan. *Id.* at 57. By the time Officer Hollman reached the two men, Officer Kochmer had already deployed his taser on Appellant and Morgan. *Id.* at 57. Appellant and Morgan fell to the ground, and Appellant proceeded to raise his hands. *Id.* at 57. Officer Hollman then observed the handle of a firearm sticking out of Appellant's right cargo shorts pocket. *Id.* at 58. Appellant was placed in the patrol car. *Id.* at 58. A revolver was also recovered from

Morgan after it fell out of his waistband. *Id.* at 59. When Appellant was removed from the car for a thorough pat-down, the officers found drugs in the vehicle under the area where Appellant had been seated. *Id.* at 60.

The evidence of record supports the trial court's findings. Thus, based on the totality of circumstances, we agree with the trial court's conclusion that the officers had reasonable suspicion to stop Appellant. As stated previously, the officers first stopped on Natrona Street, a known high-crime area, after seeing the unidentified male jump up, grab at his waistband, and flee upon their approach. This behavior was sufficient to establish reasonable suspicion that criminal activity was afoot. "[I]t is well settled that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop." *Commonwealth v. McCoy*, 2017 PA Super 20, *4, ____ A.3d ____, ____ (Pa. Super. filed January 27, 2017). *See also Commonwealth v. Washington*, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence").

Upon the officers stopping and opening the car door to investigate, Appellant looked directly at the officers, jumped up and grabbed at the right pocket on his cargo shorts, and started to run. This behavior was sufficient to establish reasonable suspicion on the officers' part that Appellant was involved in criminal activity. *McCoy*, 2017 PA Super 20, at *4;

*Washington*, 51 A.3d at 898. Thus, the officers were justified in attempting an investigatory detention of Appellant.

When Appellant began to flee, Officer Kochmer ordered him to stop. Appellant did not comply and Officer Kochmer was forced to deploy his taser. After being tased and falling to the ground, Appellant put his arms in the air, and the gun became clearly visible. Thus, the reasonable suspicion justifying the initial investigatory detention ripened into probable cause supporting Appellant's arrest. Accordingly, Appellant's claim that the firearm was obtained as the result of an unlawful detention and was therefore fruit of the poisonous tree lacks merit. The trial court properly denied Appellant's motion to suppress.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2017