781 A.2d 1161 (2001)
In the Interest of D.M.
Appeal of D.M.
Supreme Court of Pennsylvania.
Resubmitted June 27, 2001.
Decided October 18, 2001.
*1162 John W. Packel, L. Roy Zipris, for D.M.
Catherine Marshall, Hugh Burns, for Commonwealth.

OPINION
CAPPY, Justice.
We originally issued an opinion in this matter on December 27, 1999, wherein we held that a police officer did not possess the requisite cause to stop appellant pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. In the Interest of D.M., 560 Pa. 166, 743 A.2d 422 (1999)(hereinafter "D.M."). The United States Supreme Court issued a per curiam order vacating our prior decision and remanding the case for further consideration in light of its opinion in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). We now reverse our original decision.
The facts and procedural history, as reported in the previous opinion, established the following:
On June 24, 1996, at approximately 6:00 p.m., Officer Chris Frazier received a radio call regarding a man with a gun at 28th and Cecil B. Moore Avenues in Philadelphia. The officer was only one block from the location at the time of the call. The radio call included a description of the "man with a gun" as a black male, wearing a white t-shirt, blue jeans and white sneakers.
Upon arriving at the scene, the officer saw appellant, D.M., who matched the description given by the radio call.1 Officer Frazier exited his vehicle and told appellant to come over. Appellant ran away from the officer. Police back up approached the scene and appellant was stopped between the two cars. Officer Frazier asked appellant to put his hands on the hood of the car in front of him and proceeded to pat appellant down for the officer's own protection. Officer Frazier felt a hard object resembling a handgun in appellant's crotch area. A.32 caliber handgun fell out of appellant's right pants leg. At that point, Officer Frazier secured the gun and arrested appellant.
Appellant filed a motion to suppress alleging violations of both the United States and Pennsylvania Constitutions. Following a hearing, the trial court denied appellant's motion to suppress. That same day, the court adjudicated appellant delinquent and placed him on Intensive Probation. The Superior Court affirmed in a memorandum opinion. This court granted the petition for allowance of appeal in order to address the issue of whether the officer possessed reasonable suspicion to stop appellant based on an anonymous tip, where appellant fled at the time he was approached by the officer.2
1. Although there appears to be some dispute as to whether appellant was the only person present at the time Officer Frazier arrived on the scene, our scope of review is limited to considering only the evidence that is uncontradicted.
2. Appellant did not contend that the frisk was improper in the courts below. Similarly, appellant does not contend that the frisk was improper to this court, thus the only issue we address is whether the stop was supported by reasonable suspicion.
D.M., 743 A.2d at 424.
On appeal, we held that the officer did not possess a reasonable suspicion to stop appellant and reversed the lower courts. The United States Supreme Court remanded this matter for our reconsideration in light of Wardlow. Once again, the sole issue before our court is whether the police demonstrated the requisite cause to stop appellant, based on an anonymous tip, where appellant fled when the officer approached him.
*1163 Appellant has filed a Petition for Clarification and/or Affirmance of this Court's Judgment as Resting Upon State Constitutional Grounds. Appellant argues that under Article 1, Section 8 of the Pennsylvania Constitution, the police could not properly stop him since the detention must be justified at its inception. According to appellant, the critical inquiry is whether the police had the requisite cause to stop him at the time they initially approached him rather than at the time they actually effectuated the stop. Appellant asserts that case law, decided under the Pennsylvania Constitution, supports his position. However, for the reasons stated herein, we cannot agree with appellant's argument.
It is well settled that the purpose of both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution is to protect citizens from unreasonable searches and seizures. Commonwealth v. Jackson, 548 Pa. 484, 698 A.2d 571, 573 (1997). In the seminal case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court indicated that police may stop and frisk a person where they had a reasonable suspicion that criminal activity is afoot. In order to determine whether the police had a reasonable suspicion, the totality of the circumstancesthe whole picturemust be considered. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-18, 101 S.Ct. 690. Pennsylvania courts have consistently followed Terry in stop and frisk cases, including those in which the appellants allege protections pursuant to Article 1, Section 8 of the Pennsylvania Constitution. Jackson; see also Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673, 677 (1999).
Appellant now asks this court to depart from this longstanding practice of following Terry. However, we see no reason at this juncture to embrace a standard other than that adhered to by the United States Supreme Court. Appellant is correct that our case law has questioned the relevancy of flight in reviewing the totality of the circumstances. Indeed, in our original opinion in D.M., we concluded that flight was not a factor that would weigh in favor of finding reasonable suspicion or probable cause under the totality of the circumstances test. D.M., 743 A.2d at 426. Nevertheless, this conclusion has been directly contradicted by the United States Supreme Court's recent decision in Wardlow.
In Wardlow, the Chicago police sent a four-car caravan into a high crime area to investigate drug activity. Wardlow, 528 U.S. at 121, 120 S.Ct. 673. One of the officers in the last vehicle observed the respondent on a corner with an opaque bag in his hand. Id. at 121-22, 120 S.Ct. 673. The respondent looked at the officers and fled. The officers cornered the respondent and upon exiting their car, immediately conducted a brief pat-down search for weapons. Id. at 122, 120 S.Ct. 673. During the pat-down search of the respondent, the officer discovered a gun. The issue before the court was whether sudden flight in a high crime area created a reasonable suspicion justifying a Terry stop. Id. at 123, 120 S.Ct. 673.
In explaining that such a seizure was justified, the Court reiterated the Terry standard and concluded that an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Id. at 124, 120 S.Ct. 673. The Court acknowledged that mere presence in a high crime area was insufficient to support a finding of reasonable suspicion.
*1164 However, a court could consider "the fact that the stop occurred in a `high crime area'" in assessing the totality of the circumstances. Id. Similarly, the Court held that unprovoked flight could be considered among the relevant contextual considerations, since "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion" and "[h]eadlong flight wherever it occursis the consummate act of evasion. ...." Id. Based upon respondent's unprovoked flight in a high crime area, the Court concluded that the officer was justified in suspecting that criminal activity was afoot.
Following this decision, it is evident that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a Terry stop under the Fourth Amendment. In light of this recent case law, it is clear that our original analysis in this case was contrary to the United States Supreme Court's subsequent analysis in Wardlow.
In the instant case, the police received an anonymous telephone call reporting that appellant was on a specific corner with a gun. The caller also described what appellant was wearing. This information standing alone was insufficient to support a finding of reasonable suspicion. Jackson, 698 A.2d at 574-75. However, as the police officer approached appellant, he turned and fled the scene. As the Court indicated in Wardlow, flight is the consummate act of evasion. Thus, appellant's flight coupled with the anonymous caller's information was sufficient to arouse the officer's suspicion that criminal activity was afoot at the time he stopped appellant.
Appellant argues that he was "seized" at the time the police initially approached him and that the initial detention must be justified by reasonable suspicion. According to appellant, flight precipitated by unjustified police conduct cannot be used in the determination of reasonable suspicion because the flight occurs only after the police have initiated an unjustified seizure. Commonwealth v. Matos, 543 Pa. 449, 672 A.2d 769 (1996).
Appellant's interpretation of Matos is incorrect. In Matos, we explained that the pursuit of an appellant by police officers amounted to a seizure. Matos, 672 A.2d at 771 (emphasis added).[1] Thus, the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk. However, Matos did not address whether the police needed some level of requisite cause at the time they initially approached the appellant.
Rather, that question is governed by the type of encounter that the police initiated when they approached the appellant.
Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions.
Commonwealth v. Polo, 563 Pa. 218, 759 A.2d 372, 375 (2000). Further, the police may approach anyone in a public place to talk to him, without any level of suspicion, but the citizen "has a right to ignore the police and go about his business." Wardlow, *1165 528 U.S. at 125, 120 S.Ct. 673 (citing Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)); see also Polo ("a `mere encounter' (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop and respond"); Commonwealth v. Mendenhall, 552 Pa. 484, 715 A.2d 1117, 1119 (1998).
In the instant case, at the time the police initially approached the appellant it was unclear whether the police intended to do anything other than talk to him. Thus, the initial approach did not need to be justified by any level of suspicion. Rather, the appropriate time to consider whether the police had reasonable suspicion is at the time the police actually effectuated the seizure of the appellant and the totality of the circumstances test, by its very definition, requires that the whole picture be considered when determining whether the police possessed the requisite cause to stop appellant. Cortez. Here, the police effectuated the stop following appellant's flight from the scene, thus, flight was clearly relevant in determining whether the police demonstrated reasonable suspicion to justify a Terry stop under the totality of the circumstances.
Accordingly, for the reasons stated herein, we reverse our earlier decision and reinstate the Order of the Superior Court affirming the judgment of sentence.[2]
Justice ZAPPALA files a dissenting opinion in which Chief Justice FLAHERTY and Justice NIGRO join.
ZAPPALA, Justice, dissenting.
Because the United States Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), does not affect our prior decision in this case pursuant to Article 1, Section 8 of the Pennsylvania Constitution, holding that the officer involved did not possess reasonable suspicion to stop Appellant based on an anonymous tip, where Appellant fled at the time he was approached by the officer, I dissent.
I find the majority writer's present change of position regarding our disposition of this matter pursuant to Article 1, Section 8 perplexing. In our original opinion addressing this matter, we relied upon both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution in holding that the police officer here did not possess the requisite cause to stop appellant based upon flight alone. In re D.M., 560 Pa. 166, 743 A.2d 422 (1999). While the United States Supreme Court's decision in Wardlow impacts upon our analysis as it relates to the Fourth Amendment, the Court's decision is not dispositive of our state constitutional analysis. Moreover, regardless of the majority writer's current disagreement with his prior disposition of the case pursuant to Article 1, Section 8, principles of stare decisis mandate that such disposition, a majority opinion of this Court, remains the law of this case and of the Commonwealth. As Justice Cappy cogently noted in Commonwealth v. Tilghman, 543 Pa. 578, 673 A.2d 898 (1996), a majority opinion of this Court is binding not only on the parties before us, under the doctrine *1166 of law of the case, but is precedent as to different parties in cases involving substantially similar facts, pursuant to the rule of stare decisis.
In Commonwealth v. Matos, 543 Pa. 449, 672 A.2d 769 (1996), this Court considered whether police officers were required to establish reasonable suspicion pursuant to Article 1, Section 8 in order to recover contraband by a person fleeing the police. Matos responded to the Supreme Court's decision in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), wherein the Court concluded that police officers could recover contraband from a fleeing suspect, since no seizure occurred for purposes of the Fourth Amendment. Matos involved three cases, which were consolidated for appeal.
In the lead opinion, Commonwealth v. Matos, 23 E.D. Appeal Docket 1994, the facts established that two Philadelphia police officers responded to a radio broadcast that unknown persons were selling narcotics in the vicinity of Reese Street. As the police approached a group of three men in a nearby playground, the men fled. The police pursued the men and one of the pursuing officers observed Matos discarding a plastic bag of cocaine. The police recovered the bag. The issue before our Court was whether the police pursuit amounted to a seizure under Article 1, Section 8 of the Pennsylvania Constitution.
We rejected the decision in Hodari D. under our heightened privacy considerations pursuant to Article 1, Section 8 of the Pennsylvania Constitution. Rather, we determined that police pursuit amounted to a seizure, which must be justified by either a reasonable suspicion or probable cause. Ultimately, we concluded that the facts and circumstances surrounding Matos did not create a reasonable suspicion that criminal activity was afoot.[1]
Once again, in Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673 (1999), we considered the relevancy of flight in determining the existence of a reasonable suspicion. In Cook, the police officer observed what he believed to be a drug transaction between appellant and another individual. When the officer approached appellant, the appellant began backing away and began to run "in almost a dead sprint." Id. at 674. As the appellant was running away, the officer observed appellant discard two pagers and a sandwich bag. The officers apprehended appellant and retrieved the sandwich bag. Id. The bag contained eighteen large rocks of crack cocaine. The sole issue before us was whether the officer demonstrated a reasonable suspicion to stop appellant. Id.
In reviewing the issue, we reiterated that "a police officer's pursuit of a person fleeing the officer was a seizure for purposes of Article 1, Section 8 of the Pennsylvania Constitution." Cook, 735 A.2d at 675 (citing Matos). Thus, in order to recover contraband from a fleeing suspect the police officer needed to demonstrate either a reasonable suspicion or probable cause. Id. In examining whether a reasonable suspicion existed, all the facts and circumstances surrounding the stop can be considered. Id. at 677. However, certain facts considered alone, like flight, cannot establish a reasonable suspicion. Id. Rather, a combination of these facts is necessary to establish the requisite cause for the stop. Id. In the end, we concluded that the officer demonstrated a reasonable suspicion based upon his first hand observations of appellant.
*1167 In the original D.M. opinion authored by the majority writer herein, we found the analysis employed in Cook to be instructive in reviewing the issue therein.
[I]n Cook, this court made clear that flight alone does not establish reasonable suspicion. 735 A.2d at 677. However, flight along with other facts, may demonstrate a reasonable suspicion that criminal activity is afoot. Id. In making the determination that reasonable suspicion existed, we relied upon the fact that the officer made firsthand observations of suspicious conduct, which based upon his experience, indicated that criminal activity was afoot, before he even approached appellant. Id. Moreover, we explained that flight could be considered in establishing reasonable suspicion, since the officer's suspicions were already aroused at the time appellant fled. Id. at 677-78. Accordingly, Cook makes clear that the appellant's subsequent flight becomes a relevant factor, in determining reasonable suspicion, only when the officer's suspicions are already aroused.
In re D.M., 743 A.2d at 426.
The analysis in Cook, which is cited extensively in D.M., was clearly rooted in Pennsylvania's heightened privacy considerations pursuant to Article 1, Section 8 as interpreted by this Court in Matos. Moreover, our conclusion in the original D.M. opinion was consistent with both Matos and Cook. The facts in Matos were almost identical to the facts of the instant case, except in this case, the man was allegedly carrying a gun instead of drugs and did not abandon anything as he was fleeing the police. We have previously indicated that a radio call regarding a man with a gun does not create a reasonable suspicion that criminal activity is afoot. Commonwealth v. Jackson, 548 Pa. 484, 698 A.2d 571 (1997); Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068 (1997). Thus, there are no facts in the instant case justifying a departure from Matos. In addition, the instant case is distinct from the situation in Cook, since in that case we emphasized that it was the police officer's firsthand observations of suspicious activity rather than the ensuing flight that created a reasonable suspicion. In this case, there were no comparable firsthand observations on the part of the police officer creating a reasonable suspicion that criminal activity was afoot.
Accordingly, since there are no facts in the instant case justifying a departure from prior case law under Article 1, Section 8 of the Pennsylvania Constitution, this Court is compelled to affirm our prior decision reversing the Superior Court and granting appellant's motion to suppress the contraband. As the Court's position has inexplicably changed, I dissent.
Chief Justice FLAHERTY and Justice NIGRO join this dissenting opinion.
NOTES
[1] Furthermore, in Matos, the sole issue before this court was "whether contraband discarded by a person fleeing a police officer are the fruits of an illegal `seizure' where the officer possessed neither `probable cause' to arrest the individual nor reasonable suspicion to stop the individual and conduct a Terry frisk." Id. at 770. In Matos, the Commonwealth did not raise any challenge to whether there was reasonable suspicion to stop or probable cause to seize the defendants. Therefore, the instant case speaks to an issue that was not contemplated by our decision in Matos, since today, we are specifically addressing whether the police possessed the requisite cause to stop the appellant.
[2] As noted supra at page 3, subsequent to the remand from the United States Supreme Court, appellant filed a Petition for Clarification and/or Affirmance of this Court's Judgment as Resting Upon State Constitutional Grounds. We grant the Petition to the extent that we have considered appellant's arguments raised in the petition herein. Following reflection, however, as discussed more fully above, we have concluded that appellant's arguments raised in that Petition do not entitle him to relief on independent state grounds.
[1] We reached the same conclusion in the other cases that were consolidated with Matos. Commonwealth v. McFadden, 27 E.D. Appeal Docket 1994; Commonwealth v. Carroll, 33 E.D. Appeal Docket 1994.