J-S14041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| DERRICK D. THOMAS, | : | |
| Appellant | : | No. 2495 EDA 2014 |

Appeal from the Judgment of Sentence entered on July 28, 2014
in the Court of Common Pleas of Delaware County,
Criminal Division, No. CP-23-CR-0005382-2013

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　**FILED MARCH 09, 2015**

Derrick D. Thomas ("Thomas") appeals the judgment of sentence imposed following his convictions of possession of a firearm, firearms not to be carried without a license, possession of marijuana, possession with intent to deliver cocaine, and possession of drug paraphernalia.[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for purposes of this appeal.  **See** Trial Court Opinion, 9/24/14, 1-3.

Thomas filed a timely Notice of Appeal, and a court-ordered Statement of Matters Complained of on Appeal.

On appeal, Thomas raises the following issue for our review:

---

[1] **See** 18 Pa.C.S.A. §§ 6105, 6106; 35 Pa.C.S.A. §§ 780-113(a)(16), (30), (32).

Whether the [trial] court erred in failing to suppress the gun and controlled substances recovered by the police in this matter[,] since they acted without the requisite probable cause or reasonable suspicion to initiate the chase and seizure of [] Thomas[,] which led directly to the forced abandonment of the weapon and the discovery of the marijuana and cocaine in his pockets[?]

Brief for Appellant at 7 (capitalization omitted).

Thomas contends that the actions of the police did not equate to a "mere encounter," but instead constituted an "investigative detention," which triggered his flight and the subsequent pursuit by police. *Id*. at 11-12. Thomas asserts that the trial court erred by determining that (1) Officer Marlow Freeman ("Officer Freeman") engaged in a mere encounter with Thomas, and (2) Thomas's attempt to flee amounted to an unprovoked flight which triggered reasonable suspicion, thereby legitimizing Officer Freeman's pursuit of Thomas. *Id*. at 13. Thomas points out that Officer Freeman approached him in his police vehicle, with its lights flashing and siren blaring, and exited the vehicle "in deliberate fashion to 'cut off' [Thomas]," after leaving the police vehicle in the middle of the street. *Id*. at 14. Thomas contends that these circumstances "communicated to [Thomas] an official compulsion to stop[,] instead of the onset of an informal interaction that he could simply ignore." *Id*. Thomas asserts that, because the police did not know the anonymous tipster who provided a description matching Thomas, reasonable suspicion could only be had through independent corroboration. *Id*. at 15-16. Thomas asserts that neither Deputy

Commissioner Otis Blair ("Deputy Blair") nor Officer Freeman were able independently corroborate the anonymous tip, as neither observed Thomas with a gun. *Id*. at 16. Thomas claims that, because the police lacked reasonable suspicion, he was subjected to an illegal investigative detention, requiring suppression of the gun and drugs that police discovered. *Id*. at 17.

In a case such as this, where the trial court denied a suppression motion, our standard of review is well-established:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

In its Opinion, the trial court addressed Thomas's claim, set forth the relevant law, and concluded that it lacks merit. *See* Trial Court Opinion, 9/24/14, 3-5. We agree with the sound reasoning of the trial court and affirm on the basis of the rationale expressed in its Opinion. *See id*.

Judgment of sentence affirmed.

Donohue, J., joins the memorandum.

Olson, J., concurs in the result.

J-S14041-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015

- 4 -

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-23-CR-5382-2013
                :
           **vs.**           :
                :
     **DERRICK THOMAS**        :
                :

**A.Sheldon Kovach, Esquire, on behalf of the Commonwealth**
**Patrick J. Connors, Esquire on behalf of the Defendant**

## O P I N I O N

Bradley, J.                     **FILED:** 9/24/2014

After a jury trial Defendant was found guilty of possession of a firearm (F2)[1], firearms not to be carried without a license (F3)[2], possession of cocaine with intent to deliver (UF)[3], possession of marijuana (UM)[4] and possession of drug paraphernalia (M)[5]. On July 28, 2014 an aggregate sentence of sixty-eight (68) to 156 months of incarceration to be followed by seven years of probation was imposed.

Defendant filed a pre-trial motion to suppress alleging that an unconstitutional seizure resulted in the forced abandonment of a handgun rendering this evidence and controlled substances and drug paraphernalia seized incident to his arrest inadmissible at trial. After a hearing the motion was denied.

---

[1] 18 Pa.C.S.A. § 6105
[2] 18 Pa.C.S.A. § 6106
[3] 35 Pa.C.S.A. 780-113(A)(30)
[4] 35 Pa.C.S.A. § 780-113(A)(16)
[5] 35 Pa.C.S.A. 780-113(A)(32)

1

On March 27, 2014 the court heard the testimony of Officer Marlow Freeman of the Chester Police Department. Officer Freeman, an officer with twenty-five years' experience in Chester, testified that on July 29, 2013 at about 10:43 a.m. he was on duty, in uniform and in a marked police vehicle. At police headquarters he received a radio report that there were two black males in the vicinity of 21st and Upland Streets. One wore a green t-shirt. The second man wore a white t-shirt and dark shorts and he had a gun. N.T. 3/27/14 p. 7, 14, 18, 25. The initial source of this information was anonymous. Id . at 14. Twenty-first and Upland Street is a residential area known for "high drug trafficking," assaults and gun violence. It is several blocks from police headquarters. Id. at 8. Officer Marlow drove to 21st and Upland with his lights and sirens activated. Before arriving he communicated with Deputy Commissioner Blair who was already in the area and observed two individuals who matched the description that was provided over the radio. Deputy Commissioner Blair reported seeing two men walking together on Upland Street and then separating at about 22nd Street. The man who matched the description of the man holding a gun, wearing a white t-shirt and dark shorts- walked west on 22nd Street. Id. at 9. At the same time Officer Blair was traveling up 22nd street towards 21st and Upland. Id. Officer Freeman and the Defendant were on the same street heading toward one another. Id. at 20.

Officer Blair saw the Defendant, Derrick Thomas walking along 22nd toward him. Id. at 24. He stopped his vehicle and exited. Defendant looked in Officer Freeman's direction and went no further on 22nd Street. Instead he ran off between two residential properties. Id. at 11, 18, 24. Officer Freeman was about twenty feet from the Defendant when a chase ensued. Id. at 11. During the brief chase Defendant reached into his waistband, took out a

2

silver handgun and tossed it into the fenced backyard of a residence. Defendant was arrested immediately, handcuffed and taken into custody. Cocaine, marijuana and baggies were removed from Defendant's person when a search incident to the arrest was conducted before Defendant was placed in a patrol vehicle. Id at 13, 21.

In his "Statement of Matters Complained of on Appeal," Defendant raises the following:

> The court erred in failing to suppress the gun and controlled substance recovered by the police in this matter since they acted without the requisite probable cause or reasonable suspicion to initiate the chase and seizure of Mr. Thomas which led directly to the forced abandonment of the weapon and the discovery of the marijuana and cocaine in his pockets.

Statement of Matters Complained of on Appeal.

The Commonwealth has the burden at a suppression hearing of establishing by a preponderance of the evidence that the evidence was properly obtained. See e.g. Commonwealth v. Jackson, 62 A.3d 433, 438 (Pa. Super. 2013).Under established Pennsylvania law, interactions between police and ordinary citizens fall within three general classifications: "The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause. Commonwealth v. Chambers, 55 A.3d 1208, 1212 (Pa. Super. 2012).

3

detention must be suppressed as the fruit of an illegal "seizure" where the officer possessed neither "probable cause" to arrest the individual nor reasonable suspicion to stop the individual and conduct a Terry frisk. See e.g. Commonwealth v. Matos, 672 A.2d 769, 770 (Pa. 1996). However, where a defendant is not subject to an unlawful detention abandoned property may be admitted at trial. The Commonwealth demonstrated, through the credible testimony of Officer Freeman

In In re D.M., 781 A.2d 1161, 1164 (Pa. 2001) our Supreme Court held that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify an investigative detention. In D,M. a police officer received an anonymous call regarding "a man with a gun" at a specific intersection in Philadelphia. The man was described as a as a "black male, wearing a white t-shirt, blue jeans and white sneakers." Id. at 1162. The officer responded to the scene and saw D.M., who matched this description. The officer exited his vehicle and called D.M. over. D.M. took off running and was stopped between two cars on the street. A pat-down for officer safety followed and a handgun fell from the Defendant's pants. He was arrested and ultimately adjudicated delinquent for possessing the gun.

The Supreme Court considered the totality of the circumstances surrounding D.M.'s interaction with the officer and concluded that, at the outset, D.M. was subject to a "mere encounter," which requires no level of suspicion. D.M. took flight when the officer called to him and, based on the totality of the circumstances, reasonable suspicion justifying an investigative detention developed. D.M. matched the description of the "man with the gun," he was in the location described by the caller and he took fight without provocation. See id. at 451("flight is the consummate act of evasion. Thus, appellant's flight coupled with the

4

at 451("flight is the consummate act of evasion. Thus, appellant's flight coupled with the anonymous caller's information was sufficient to arouse the officer's suspicion that criminal activity was afoot at the time he stopped appellant").

Similarly, in this case, Officer Freeman responded to a "man with a gun" call that included a description of two men at a precise location and particularly described the man who held the gun. Deputy Commissioner Blair saw two men at the location and watched them as they parted ways. He reported Defendant's location to Officer Freeman. Officer Freeman drove up 22nd Street with his lights and siren activated and came upon the Defendant. Officer Freeman stopped his vehicle and exited. He did not stop the Defendant and up until this point engaged in a mere encounter requiring no level of suspicion. As in *D.M., supra* reasonable suspicion developed when Defendant looked in Officer Freeman's direction and ran between two residences, toward the backyards and threw his gun over a fence into a yard. Officer Freeman testified credibly that this area in Chester is known for drug trafficking and assaults and that he has responded to calls there for "shots fired." Id. at 8. The totality of all of these circumstances, gave Officer Freeman reasonable suspicion to believe that criminal activity was afoot and supported the investigative detention that ultimately took place.

In light of the foregoing it is respectfully submitted that judgment of sentence should be affirmed.

BY THE COURT:

James P. Bradley,                                          J.

FILED

2014 SEP 24 PH 2:24

OFFICE OF JUDICIAL SUPPORT DELAWARE CO. PA

5