J-S32038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| STEVEN STANSBURY | |
| Appellant | No. 656 EDA 2016 |

Appeal from the Judgment of Sentence February 16, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0002569-2015

BEFORE: GANTMAN, P.J., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　**FILED SEPTEMBER 14, 2017**

Appellant, Steven Stansbury, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for possession and possession with intent to deliver a controlled substance,[1] violations of the Uniform Firearms Act,[2] and possessing an instrument of crime.[3] Appellant contends the court erred by denying his suppression motion. We affirm.

The relevant facts of this case, as set forth by the suppression court, are as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 Pa.C.S. § 780-113(a)(16), (30).

[2] 18 Pa.C.S. §§ 6105, 6106, 6108.

[3] 18 Pa.C.S. § 907(a).

The trial testimony established that at approximately 3:37 p.m. on February 24, 2015, plain-clothed Police Officers James Balmer and Anthony Britton responded to a radio call of "Robbery in progress" on the 6100 block of Walnut Street in Philadelphia. The flash information provided was "a black male, wearing all black clothing, five foot eight inches tall, black female, orange shirt, black jacket." These officers observed a female fitting the flash information standing outside of a store, soon joined by a male, again fitting the flash description. The officers confirmed the flash information and stopped the two individuals for investigation, one of which was [Appellant]. When asked for identification, [Appellant] complied and then started to flee. Officer Balmer went to grab [Appellant], got a hold of his jacket, which [Appellant] slipped out of and continued his flight. While running into an alley, with the police officer about seven to ten feet behind him, [Appellant] discarded a black and silver handgun at the alleyway entrance. About half a block away, on 62nd Street, Officer Balmer and Officer Seda, another patrol officer who had just arrived at the scene, apprehended [Appellant]. When apprehended, [Appellant] stated that `this was his second drug and gun pinch that he was on four years' probation and that he was going away for a long time.' The robbery victims were never located, nor the gun recovered. Officer Pablo Seda testified that he recovered the discarded black jacket with sixteen yellow baggies containing marijuana as well as new and unused baggies, and two hundred and sixty five dollars was confiscated from [Appellant]. The parties stipulated to the chemist reports, a certificate of non licensure, and to an expert's testimony that the marijuana was possessed with the intent to deliver.

Suppression Ct. Op., 8/1/16, at 4-5 (citations omitted).

We also note the following testimony regarding Appellant's police interaction with the officers, which was elicited on cross-examination between Appellant's counsel and Officer Balmer:

**Q.** And you got out the vehicles--the vehicle and identified yourself as police officers immediately?

**A.** That's correct.

**Q.** Did you have a badge pulled out–

**A.** Correct.

**Q.** -and displayed? And even though the information that you had initially was--this was a robbery in progress at gunpoint, it's your testimony that you did not have a weapon drawn at the time?

**A.** That's correct. I did not have my weapon drawn.

**Q.** Did you have your hand on your weapon?

**A.** I don't recall.

* * *

**Q.** Now, you said that you were told the--well, you dealt with [Appellant] and your partner dealt with the female?

**A.** Correct.

**Q.** And-but essentially told them that you were stopping them for investigation?

**A.** Correct.

**Q.** And you, basically, were not going to let them leave until you resolve whether or not these people have been involved in a robbery, correct?

**A.** That is correct.

**Q.** Now, at some point in this conversation you're having with Mr. Stansbury, you asked him to provide you with ID, right?

**A.** Yes.

**Q.** Which he did?

**A.** Correct.

**Q.** And he gave you-went into his pocket and pulled out his wallet and got his ID?

**A.** I don't know exactly where he pulled it from. I don't remember. But he did hand me his ID card.

**Q.** Okay. Now, at this point you were-made no attempt to frisk him for your safety or anything like that?

**A.** Not as of yet.

**Q.** Didn't seem necessary? He was being relatively cooperative, wasn't doing anything–

**A.** He was being cooperative. Correct.

**Q.** And after he provided you with his ID, at some point thereafter he decided he wasn't going to stay?

**A.** Correct.

**Q.** Now, when he made that decision, were you holding onto him in any way?

**A.** I believe I had his ID in my hand. I was not holding on to him.

**Q.** His jacket came off?

**A.** When he started to run, I grabbed his jacket.

**Q.** Well, you grabbed him, presumably?

**A.** His jacket, he spun out of it. So I had an empty jacket in my hand.

**Q.** Okay. So when you grabbed his jacket, you what? Grabbed his arm? Grabbed his –

**A.** I don't remember exactly where I grabbed him, but I grabbed his jacket. He spun out of it. The jacket went to the ground. I continued chasing him.

N.T., 12/8/15, at 21-24.

Appellant was arrested and charged with the aforementioned crimes on February 25, 2015. Appellant filed a motion to suppress which the trial court denied after a suppression hearing on December 8, 2015. Appellant proceeded immediately to a bench trial wherein he was convicted of the above-referenced charges but acquitted of tampering with physical evidence.[4] On February 16, 2016, the court sentenced Appellant to an aggregate term of four to eight years' imprisonment followed by two years of probation. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises a single issue for our review:

> Did not the trial court err in denying [A]ppellant's motion to suppress physical evidence, where the investigating officers, acting on an anonymous police radio call, lacked reasonable suspicion or probable cause justifying the detention, arrest, frisk or search of [A]ppellant, where [A]ppellant's flight and the recovery of marijuana and observations of a discarded gun were the fruit of an initial stop, and where their recovery and use at trial therefore violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 3.

Appellant argues that the trial court erred by denying his suppression motion because he was effectively "seized" from the inception of his encounter with Officers Balmer and Britton. To this end, Appellant highlights

---

[4] 18 Pa.C.S. § 4910(1).

Officer Balmer's testimony where he "conceded that [A]ppellant was not free to leave, as the officer was going to restrain him until the officer determined whether [A]ppellant was involved in a robbery." *Id.* at 19. Further, Appellant claims that the seizure constituted an investigatory detention which was not supported by reasonable suspicion. Appellant specifically asserts that the anonymous caller's report of a robbery in progress with only a vague physical description of Appellant, was insufficient information to establish the reasonable suspicion necessary for an investigatory detention. Therefore, Appellant asserts, the contraband discovered in his jacket and the gun he jettisoned during his flight, were the product of an unlawful seizure and should have been suppressed.

When considering a challenge to a suppression motion,

> [we are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to [ ] plenary review.

*Commonwealth v. Parker*, 161 A.3d 357, 361-62 (Pa. Super. 2015) (citation omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures."  *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012).  There are three categories of interactions between citizens and the police:

> Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police.  The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop and respond.  The second, an "investigatory detention," permits the temporary detention of an individual if supported by reasonable suspicion.  The third is an arrest or custodial detention, which must be supported by probable cause.
>
> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. . . .
>
> The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority.  Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter.  What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

> [Our Supreme] Court and the United States Supreme
> Court have repeatedly held a seizure does not occur where
> officers merely approach a person in public and question
> the individual or request to see identification. Officers may
> request identification or question an individual so long as
> the officers do not convey a message that compliance with
> their requests is required. Although police may request a
> person's identification, such individual still maintains the
> right to ignore the police and go about his business.

*Commonwealth v. Lyles*, 97 A.3d 298, 302-03 (Pa. 2014) (citations and

quotation marks omitted).

When determining whether an interaction between law enforcement

and a citizen constitutes a mere encounter or a seizure:

> The pivotal inquiry in making this determination is whether
> a reasonable person innocent of any crime, would have
> thought he . . . is being restrained had he . . . been in the
> defendant's shoes. A Court must examine all surrounding
> circumstances evidencing a show of authority or exercise
> of force, including the demeanor of the police officer, the
> manner of expression used by the officer in addressing the
> citizen, and the content of the interrogatories or
> statements. If a reasonable person would not feel free to
> terminate the encounter with police and leave the scene,
> then a seizure of that person has occurred.

*Commonwealth v. Chambers*, 55 A.3d 1208, 1215 (Pa. Super. 2012)

(citation omitted).

It is well settled that "interrogation relating to one's identity or a

request for identification by the police does not, by itself, constitute a Fourth

Amendment seizure." *Commonwealth v. Au*, 42 A.3d 1002, 1005-07 (Pa.

2012) (officer's late night interaction with passengers in a parked car, while

on routine patrol, constituted a mere encounter even though the officer

asked the occupants for identification); *Lyles*, 97 A.3d at 305-06 (officer's contact with defendant constituted a mere encounter when officer approached defendant and asked for identification and wrote down the information; officer did not brandish a weapon or threaten the defendant). *Commonwealth v. Baldwin*, 147 A.3d 1200, 1204 (Pa. Super. 2016) (officer's interaction with defendant was a mere encounter where officer approached defendant in a parking lot, did not activate his patrol car's lights/siren or physically block the path of defendant but instead asked for defendant's identification).

However, this Court has held that "the combination of the threatening presence of several officers and the indication that the [defendant] was suspected of criminal activity [requires the conclusion that] a reasonable person would believe that he was not free to leave." *Parker*, 161 A.3d at 363-64 (citations omitted) (officers' interaction with defendant constituted an investigatory detention because two officers were present and suggested that defendant was suspected of criminal activity at a particular restaurant). Further, it is beyond cavil "that where a citizen approached by a police officer is ordered to stop . . . obviously a 'stop' occurs." *Commonwealth v. Morrison*,___ A.3d ___, ___, 2017 WL 2665151 at * 4-5 (Pa. Super. June 21, 2017) (citation omitted) (an officer's interaction constituted an investigatory detention rather than a mere encounter when he directed the defendant to "stop" twice).

Significantly here, we also recognize that a defendant's unprovoked flight in a high crime area is a relevant factor in determining whether officers had the requisite probable cause to "seize" a defendant through pursuit. *In re D.M.*, 781 A.2d 1161, 1164-65 (Pa. 2001) (applying the totality of the circumstances test to find that defendant's flight from the scene together with an anonymous tip was relevant in determining that police had reasonable suspicion to justify an investigatory detention).

In the case *sub judice,* we must begin by determining whether Appellant's initial interaction with police constituted a mere encounter or an investigatory detention. *See Lyles*, 97 A.3d at 302-03. Officers Balmer and Britton did not make physical contact with Appellant nor did they tell him to "stop." *See Baldwin*, 147 A.3d at 1204. The officers also did not accuse Appellant of involvement in specific criminal activity. *See Parker*, 161 A.3d at 363. These factors weigh in favor of a determination that the initial interaction was a mere encounter. *See Chambers*, 55 A.3d 1208, 1215 Further, the officers' request for identification did not transform a mere encounter into an investigatory detention. *See Au,* 42 A.3d at 1005; *Lyles*, 97 A.3d at 302-03; *Baldwin*, 147 A.3d at 1204.

The crux of Appellant's argument lies in his contention that Officer Balmer admitted at trial that he did not intend to let Appellant leave until he resolved whether Appellant was involved in a robbery. However, an objective test as to Appellant's perception of whether he was free to leave is

the relevant inquiry, not Officer Balmer's subjective expectations as formulated by defense counsel. *See Lyles*, 97 A.3d at 302-03; *Chambers*, 55 A.3d at 1215. Thus, we conclude that under the totality of the circumstances, Appellant's initial interaction with the officers constituted a mere encounter, which did not require reasonable suspicion. Moreover, we conclude that Appellant's sudden flight, coupled with the description provided in the anonymous radio call, were sufficient to establish the requisite reasonable suspicion the officer needed to pursue Appellant. *See In re D.M.*, 781 A.2d at 1164-65. Therefore, we hold that the contraband discarded during Appellant's flight was not recovered incident to an unlawful seizure and the trial court properly denied Appellant's motion to suppress this evidence. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2017