J-A14030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAIME NATER | : | |
| | : | |
| Appellant | : | No. 1573 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001198-2021

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 21, 2023**

Appellant, Jamie Nater, appeals from the April 27, 2022 Judgment of Sentence of four to eight years of incarceration entered in the Philadelphia County Court of Common Pleas following his conviction of one count each of Possession of a Firearm without a License, Possession of a Firearm by a Prohibited Person, and Unlawfully Carrying a Firearm in Public.[1]  Appellant challenges the denial of his motion to suppress.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  Just after midnight on August 16, 2020, Philadelphia Police Officers Mark Wildsmith and Anthony Agudo were on patrol car near 3100 "A" Street in the Kensington neighborhood of Philadelphia.  The officers were familiar with that area as the

---

[1] 18 Pa.C.S. §§ 6106, 6105, and 6108, respectively.

police district's "crime hub."[2, 3]  As the officers were driving on Clearfield Street approaching "A" Street, Officer Wildsmith observed Appellant cross the street on an angle, clutching a very large, heavy object on the right hip of his sweat shorts.  Based on his more than five years of experience, Officer Wildsmith believed that the object was a gun.

Officer Redmond,[4] who was driving the vehicle, reversed back up Clearfield Street and Officer Wildsmith briefly lost sight of Appellant.  Officer Redmond then stopped the vehicle and all the officers exited to investigate.  Moments later when Officer Wildsmith again caught sight of Appellant, Appellant was no longer walking "with the same demeanor."[5]  Believing that Appellant had just discarded a weapon, Officer Wildsmith proceeded to conduct a stop of Appellant to further investigate.

Meanwhile, upon his exit from the police car, Officer Agudo heard a metal object hit the ground.  At that point, he took out his flashlight and began looking around in the area, ultimately locating a discarded firearm in the vacant lot adjacent to where Officer Wildsmith had initially seen Appellant.

---

[2] N.T. Hr'g and Trial, 11/3/21, at 10.  Officer Wildsmith explained that "[i]t is a very high crime area.  That's one of the areas we have the most shooting incidents, homicides.  There's also a lot of illegal drug sales within the area." *Id.*

[3] In fact, a shooting took place in the area while the police officers were arresting Appellant.

[4] Officer Redmond's first name does not appear in the record.

[5] *Id.* at 19.

As a result of this encounter, police arrested Appellant and charged him with the above offenses.

On November 3, 2021, Appellant's counsel litigated a motion to suppress the firearm that Appellant discarded when the police officers approached him to investigate. Officers Wildsmith and Agudo testified to the above facts. Officer Wildsmith also testified that he probably said something to Appellant from his vehicle, but he did not recall what it was. After hearing the testimony and counsels' arguments, the trial court concluded that Appellant had not been seized when he abandoned the firearm and, in the alternative, that the officers would have had reasonable suspicion for an investigative stop of Appellant. The court, thus, denied Appellant's motion to suppress. Appellant immediately waived his right to a jury trial and proceeded to a bench trial following which the trial court convicted him of the charged offenses.

On April 27, 2022, the trial court sentenced Appellant to an aggregate term of four to eight years of incarceration. Appellant filed a post-sentence motion, which the court denied.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> Did the lower court err in denying [Appellant's] motion to suppress where he was seized by police without reasonable suspicion or probable cause and thereafter forced to abandon a firearm?

Appellant's Brief at 3.

**A.**

Our standard of review for the denial of a suppression motion is well established:

[The] standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if legal conclusions drawn therefrom are in error.

*Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017). Our scope of review in suppression matters is limited to the suppression hearing record and excludes any evidence elicited at trial. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). There are three defined categories of interaction between citizens and police officers: (1) mere

encounter, (2) investigative detention, and (3) custodial detention. ***See Commonwealth v. Collins***, 950 A.2d 1041, 1046 (Pa. Super. 2008).

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carries no official compulsion on the part of the citizen to stop or to respond." ***Commonwealth v. Fuller***, 940 A.2d 476, 479 (Pa. Super. 2007). There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries of them. ***See Beasley***, ***supra*** at 624; ***see also Commonwealth v. Lyles***, 97 A.3d 298, 303-04 (Pa. 2014) (finding a mere encounter where two uniformed police officers arrived in an unmarked police car, approached the defendant, and asked for identification).

Police pursuit for the purposes of an investigatory detention can be justified if officers have an objectively reasonable suspicion that crime is afoot. ***Commonwealth v. Holmes***, 14 A.3d 89, 96 (Pa. 2011). "Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances viewed through the eyes of a trained police officer." ***Commonwealth v. Williams***, 980 A.2d 667, 671 (Pa. Super. 2009).

A defendant has no standing to contest the search and seizure of items that he has voluntarily abandoned or relinquished because he has no privacy expectation in the property. ***Commonwealth v. Byrd***, 987 A.2d 786, 790 (Pa. Super. 2009). If the abandonment is coerced by unlawful police action,

then the state-based constitutional principle of forced abandonment forbids using the property for evidentiary purposes. ***Id.*** at 791.

**B.**

Appellant claims that the trial court erred in finding that that he voluntarily abandoned his firearm before police officers seized him. Appellant's Brief at 15-20. He asserts that the trial court should have suppressed the firearm because its "abandonment was preceded by coercive police action." ***Id.*** at 15. Distinguishing this case from ***Byrd***, ***supra***, Appellant argues that the facts, including that the officers reversed up Clearfield Street immediately after driving past Appellant who was merely walking alone along a residential sidewalk in the middle of the night, Officer Wildsmith said something out the patrol vehicle's window to Appellant as the vehicle reversed, and "four fully armed and uniformed officers jumped out of the police car and moved toward" him, demonstrate that the officers conducted themselves with a show of force or authority that indicate a seizure occurred. ***Id.*** at 17-18.

In ***Byrd***, the trial court granted the defendant's motion to suppress, finding that he abandoned a gun after observing three to five police cars travelling the wrong way down a one-way street without their lights and sirens activated. ***Byrd***, 987 A.2d at 792. The trial court concluded that the defendant's abandonment of the contraband was due to an "unlawful show of force." ***Id.*** This Court reversed, concluding that "appellee was not deprived of his freedom in any significant way nor could he reasonably believe that his

freedom of action was being restricted by police conduct prior to abandoning the handgun." ***Id.*** at 793.

In explaining its decision to deny Appellant's suppression motion, the suppression court noted that neither Officer Agudo nor Officer Wildsmith testified that any officers used a show of force. Trial Ct. Op. at 3 (citing N.T. at 38.). The court further stated:

> Appellant in the present case voluntarily abandoned the handgun and relinquished control over the object when he threw it into an adjacent lot. Prior to his abandonment, the police did not coerce or force [Appellant] to act by any show of force. Reversing and exiting their unmarked police vehicles did not amount to a meaningful show of force. As was the case in [***Commonwealth v.***] ***Byrd***, they did not speed or activate their lights or sirens. Appellant was compelled by his own desire to remain undetected rather than an act of law enforcement outside their authority. Once discarded, officers were free to use the firearm for evidentiary purposes[.]

***Id.*** at 7-8. Because the court concluded that the officers did not engage in any unlawfully coercive conduct prior to Appellant's abandonment of the firearm, it denied Appellant's suppression motion. ***Id.*** at 3-5 (citing ***Commonwealth v. Pizzaro***, 723 A.2d 675, 679 (Pa. Super. 1998) (emphasis in original) (citation omitted) (abandoned property is admissible where "[n]o improper or unlawful act [is] committed by the officer **prior** to the evidence being abandoned.").

Following our review, we find that the record supports the trial court's findings of fact. In addition, we agree with the court's legal conclusion that Appellant's abandonment of the firearm was not caused by any unlawful or

coercive action. The record reflects that, prior to Appellant abandoning his firearm, the officers were conducting a routine patrol of a high-crime area in an unmarked car. They observed Appellant holding onto a very large object in the hip of his sweat shorts. The officers did not activate any lights or sirens, order Appellant to stop, or exhibit any show of force. Rather, Officer Redmond merely backed the patrol car up Clearfield Street for the officers to investigate further. After Officer Redmond stopped the patrol vehicle, Officer Agudo exited and heard a metallic object hit the ground. Only then did the officers stop Appellant. Critically, the officers' testimony indicates that Appellant had abandoned the firearm prior to being stopped. As was the case in **Byrd**, Appellant's desire to remain undetected, rather than any coercive act by the officers, compelled his abandonment of the firearm. Accordingly, the trial court properly concluded that the Commonwealth was free to use the firearm for evidentiary purposes. Appellant is, thus, not entitled to relief on his claim.[6]

Judgment of Sentence affirmed.

---

[6] In light of our disposition, we need not address Appellant's challenge to the trial court alternative justification for denying his motion to suppress, *i.e.*, that the officers had reasonable suspicion for an investigative stop.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/2023</u>