J-A10023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                    :           PENNSYLVANIA
         Appellant         :
                    :
                    :
         v.             :
                    :
                    :
PATRICK J. NOLAN         :   No. 1467 EDA 2024

Appeal from the Order Entered May 8, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001301-2023

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

DISSENTING MEMORANDUM BY BECK, J.:       **FILED AUGUST 25, 2025**

I agree with the learned Majority that Officer McCauley detained Nolan when he yelled for Nolan to "come here!" *See* Majority Memorandum at 8. I respectfully depart from the Majority's determination, however, that Officer McCauley possessed reasonable suspicion at that time to stop and detain Nolan. My reasoning follows.

The record reflects that at the hearing on Nolan's suppression motion, Officer Brendan McCauley testified that he and his partner entered a convenience store on the 3100 block of North Front Street in Philadelphia, a very high-crime area, looking for suspect associated with an armed robbery that occurred the prior day. N.T., 3/25/2024, at 6-8. He indicated that Nolan

_____

[*] Retired Senior Judge assigned to the Superior Court.

was not the subject of the robbery investigation. *Id.* at 14. Officer McCauley stated that in the back of the store, he encountered Nolan and that he saw a firearm in Nolan's left jacket pocket when he shined a flashlight in the area. *Id.* at 8. Officer McCauley reported that he asked Nolan if he was carrying a firearm to which Nolan responded that he was not, and that he then asked Nolan if he could check Nolan for a firearm and Nolan declined. *Id.* at 8-9, Exhibit C-1.

Officer McCauley's bodycam footage reveals that Nolan walked toward the exit of the convenience store and that Officer McCauley followed closely behind. *Id.*, Exhibit C-1. The bodycam footage shows that as Nolan exited the store, Officer McCauley indicated to his partner his belief that Nolan was going to run. *Id.* The footage shows that as Officer McCauley exited the store, Nolan was not running, but rather walking from the sidewalk in between two cars, and only began to run when Officer McCauley sprinted towards him while yelling "come here!" *Id.* Officer McCauley testified that he gave chase and, shortly thereafter, detained and frisked Nolan, at which time he recovered a firearm from Nolan's jacket and a magazine in a separate pocket. *Id.* at 10.

The suppression court granted Nolan's motion to exclude the firearm and magazine recovered as fruits of an unlawful detention, which the Commonwealth now challenges on appeal. Specifically, the suppression court found:

> Officer McCauley testified that he intended to make a **Terry** stop after observing [Nolan] with a concealed firearm in the store, and after inquiring whether [Nolan] was, in fact, carrying a firearm. When [Nolan] responded in the negative, Officer McCauley followed, pursued, and detained him. However, Officer McCauley had no articulable facts supporting reasonable suspicion that a firearm was being used or intended to be used in a criminal manner. Officer McCauley's sole ground for stopping [Nolan] was to investigate whether [Nolan] was properly licensed. Officer McCauley did not know [Nolan], did not see [Nolan] engage in criminal behavior in the store, did not suspect that [Nolan] intended to commit a crime in the store, and did not know whether [Nolan] possessed a license to carry a firearm. Although Officer McCauley asked whether [Nolan] was carrying a firearm, he never asked whether [Nolan] was licensed to carry a firearm.

Suppression Court Opinion, 7/29/2024, at 6 (quotation marks and citations omitted). The court determined that Officer McCauley's belief that Nolan was carrying a concealed firearm, "without any articulable suspicion of criminal activity[,]" could not sustain a finding that the officer had reasonable suspicion to detain Nolan. **Id.** at 6-7.

In support of its decision, the suppression court relied on our Supreme Court's decision in **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019). In **Hicks**, the Court overruled precedent that held that "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed." **Id.** at 921 (citation omitted). The Court found "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in

public[,]" as "it is not a criminal offense for a license holder … to carry a concealed firearm in public." *Id.* at 936. The Court further explained that "[a]lthough the carrying of a concealed firearm is unlawful for a person statutorily prohibited from firearm ownership or for a person not licensed to do so, … there is no way to ascertain an individual's licensing status, or status as a prohibited person, merely by his outward appearance[,]" as "a police officer observing an unknown individual can no more identify whether that individual has a license in his wallet than discern whether he is a criminal." *Id.* at 936-37 (citation omitted). "[A]bsent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." *Id.* at 937.

The Majority correctly states our scope and standard of review, as well as the various levels of police/citizen interactions and the accompanying protections our federal and state constitutions require. *See* Majority Memorandum at 4-6 (citations omitted). I therefore do not repeat them here. The Majority concludes that Officer McCauley had reasonable suspicion to stop and detain Nolan, finding that the point at which Nolan's encounter with Officer McCauley turned into a detention occurred when the officer shouted at Nolan to "come here!" *See* Majority Memorandum at 8-9.

> Based upon the uncontradicted body worn camera video footage, Nolan was detained at the time Officer McCauley yelled "come

here." Exhibit C-1, at 1:26-1:32. Officer McCauley did nothing to provoke Nolan's flight. He merely asked a few questions and then let Nolan walk out of the store. Because Nolan fled, unprovoked in a high crime area, Officer McCauley had reasonable suspicion to chase and detain him.

*Id.*

I agree with the learned Majority that Officer McCauley detained Nolan upon commanding him to "come here." Based upon my review of the record and the applicable authority, Officer McCauley's forceful and authoritative command amounted to a seizure for Fourth Amendment purposes, as no reasonable person would believe they were free to leave at that time. **See Commonwealth v. Adams**, 205 A.3d 1195, 1200 (Pa. 2019) (observing that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"); **Commonwealth v. Luczki**, 212 A.3d 530, 543-44 (Pa. Super. 2019) (a factor supporting a finding that a seizure occurred includes "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"; something "beyond the officer's mere employment, that conveys a demand for compliance or threat of tangible consequences from refusal").

I respectfully disagree, however, that (1) Nolan fled, unprovoked, from Officer McCauley and (2) that Officer McCauley possessed reasonable suspicion to stop and detain Nolan when the officer shouted "come here!" While our Supreme Court has held "that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a **Terry** stop under the

Fourth Amendment[,]" *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001), my review of the bodycam footage clearly shows that Nolan's flight did not occur until Officer McCauley issued that command. The record reflects that Nolan walked out of the convenience store after he declined Officer McCauley's request to check him for a firearm, which (as the Majority and the Commonwealth concede) he was free to do, as police had no reasonable suspicion to believe that Nolan was committing or had committed a crime at that point. *See* N.T., 3/25/2024, at 8-9; *see also* Commonwealth's Brief at 10; Majority Memorandum at 8. Officer McCauley followed Nolan out of the store. N.T., 3/25/2024, Exhibit C-1. The bodycam footage clearly shows that when Officer McCauley exited the store, Nolan was walking, not running away. *Id.* Nonetheless, upon exiting the store behind Nolan, Officer McCauley immediately ran in Nolan's direction, commanding him to "come here!"; it was at that point that Nolan began to run. *Id.*

Thus, in my view, the record does not support the Majority's conclusion that Nolan's flight was unprovoked; Officer McCauley's command provoked Nolan's flight. *See id.* As Nolan's flight occurred after Officer McCauley had detained him, "unprovoked flight" cannot serve as a basis upon which the officer had reasonable to suspicion to conduct an investigatory detention.

Nor does the fact that Nolan lied to Officer McCauley about possessing a gun serve as a basis for reasonable suspicion in this case. *See* Majority Memorandum at 9. Although Officer McCauley testified that he observed a

gun in Nolan's pocket, the suppression court never made a factual finding that (1) the officer actually saw a gun in Nolan's pocket or (2) that the officer was aware Nolan lied. *See* Suppression Court Opinion, 7/29/2024, at 2; N.T., 5/8/2024, at 3. At best, the suppression court stated that Officer McCauley "believed" Nolan was carrying a firearm and that the officer "purportedly saw" a firearm in Nolan's jacket pocket. *See id.*; *see also Commonwealth v. Carmenates*, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (en banc) ("It is within the suppression court's sole province as fact[ ]finder to pass on the credibility of witnesses and the weight to be given to their testimony. The [suppression] court is free to believe all, some or none of the evidence presented at the suppression hearing.").[1] Significantly, Officer McCauley's

---

[1] The Majority makes a blanket statement that "[t]he trial court's factual findings are not supported by the uncontradicted record" based upon the following statement by the suppression court: "The officers followed [Nolan] out of the store and had [him] stand behind a van, and then he took off running." Majority Memorandum at 7 (quoting N.T., 5/8/2024, at 4). While I agree that the record does not support a finding that police ordered Nolan to stand behind a van after he exited the store, it is of no moment, as the Majority agrees that police seized Nolan outside the store at that very same time by ordering him to "come here!" *See id.* at 8.

To the extent the Majority finds that this misstatement provides a basis for this Court to wholly disregard the suppression court's factual findings, I disagree. We have consistently held that we are bound by the suppression court's factual findings that are supported by the record. *See, e.g, Commonwealth v. Lowrey*, 333 A.3d 440, 443 (Pa. Super. 2025). Thus, any of the suppression court's factual findings supported by the record are binding upon us.

bodycam footage does not show a firearm in Nolan's left jacket pocket. N.T., 3/25/2024, Exhibit C-1.

Therefore, the only articulable basis for Officer McCauley to stop and detain Nolan was the officer's suspicion that Nolan was carrying a firearm. In my view, and contrary to the Majority's determination, **Hicks** is squarely applicable to this case, as our Supreme Court expressly held that there is "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." **Hicks**, 208 A.3d at 936.

Because Officer McCauley pursued and detained Nolan without reasonable suspicion, Nolan's detention was unconstitutional. Consequently, I would find that the trial court appropriately suppressed the evidence police obtained during Nolan's detention and subsequent arrest. **See Commonwealth v. Mattis**, 252 A.3d 650, 654 (Pa. Super. 2021) (stating that if "a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention"). I would therefore conclude that the suppression court did not err granting Nolan's suppression motion. Thus, I respectfully dissent.