J-S14009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC SIMS | : | |
| | : | |
| Appellant | : | No. 1417 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001971-2021

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 9, 2025**

Appellant, Eric Sims, appeals from the October 21, 2022 judgment of sentence of 2½ to 5 years of incarceration entered in the Philadelphia County Court of Common Pleas following his conviction after a bench trial of firearms offenses.  Appellant challenges the denial of his suppression motion.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On November 5, 2020, at approximately 11:15 PM, Philadelphia Police Officer Michael James, who had been assigned to the 25th Police District for his entire 16-year career, received a radio call regarding a black male with a gun near the corner of 3400 North 11th Street.  Dispatch provided Officer James with information received

---

[*] Former Justice specially assigned to the Superior Court.

from a 911-caller reporting that a black male wearing a blue tracksuit with either white or silver stripes was at that location armed with a firearm.

Officer James and his partner, Officer Edward Taylor, proceeded in their patrol vehicle to the location of the reported firearm and observed a man matching the description provided by the 911-caller, and later identified as Appellant, standing with three or four other men. From his position in his vehicle, Officer James observed Appellant "start to move in a pacing manner, north and south, in approximately five to maybe six feet back and forth." N.T. Suppression, 2/15/22, at 9. Officer Taylor exited the patrol vehicle first, and Appellant began to move away from the officers. Officer James heard Officer Taylor instruct the men to remove their hands from their pockets or to show their hands, at which time Appellant "start[ed] to run a little bit southbound." *Id.* at 10. Appellant then "traversed back northbound in the opposite direction." *Id.* Officer James exited the patrol vehicle, but when Appellant began running, he returned to the vehicle to follow alongside Officer Taylor who pursued Appellant on foot.

Appellant continued running northbound, then turned a corner. Officer James, still following in his patrol car, then observed Appellant's "arm stretch out from his body in a throwing motion or almost like a tossing motion and [Officer James] saw a dark object leave [] his person." *Id.* After turning the corner and jettisoning the "dark object," Appellant continued another 10 to 15 feet before Officer Taylor caught up to Appellant and took him into custody. Shortly thereafter, Officer James recovered from a location "consistent [with]

- 2 -

where [he] saw the tossing motion direct towards" a loaded black and silver firearm. *Id.* at 11. Appellant provided Officer James with his name and date of birth, following which Officer James determined that Appellant did not have a license to carry a firearm.

The Commonwealth charged Appellant with Persons Not to Possess, Firearms Not to be Carried Without a License, and Carrying Firearms on Public Streets in Philadelphia.[1]

On December 8, 2021, Appellant filed a motion to suppress evidence alleging that police violated Appellant's state and federal constitutional rights when they stopped and frisked him without a warrant, which resulted in the illegal seizure of a firearm.

On February 15, 2022, the court held a hearing on Appellant's motion at which Officer James testified in accordance with the above facts. Officer James also testified that the 25th Police District, where he had spent his entire 16-year career, is "extremely violent," with pervasive crime, including gun crime. *Id.* at 5. Officer James testified that he did not know the woman who called 911, and to his knowledge she had never been used as a confidential informant. He stated that, at the time of the stop, he did not know whether Appellant had a license to carry a firearm. Officer James testified that he did not see Appellant engage in a "drug transaction or anything" and did not see

---

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 6108.

a bulge in Appellant's waistband. *Id.* at 14. Officer James testified that he had never investigated any shootings or made any gun arrests on this block.

In addition to Officer James's testimony, the Commonwealth also presented evidence from two body camera recordings—one from the camera worn by Officer Taylor and one worn by another officer. The second recording, made after Officers James and Taylor had apprehended Appellant, showed the officer wearing the body camera speaking with the woman who had made the 911 call. The woman told the officer that she called 911 because Appellant had carried the firearm in a manner suggesting an impending confrontation with someone. *See* Commonwealth's Exhibit C-1.

The suppression court credited Officer James's testimony and the recorded video evidence and denied Appellant's motion. The court explained that it denied the motion because the report of a person matching Appellant's description brandishing a gun, combined with his extremely nervous behavior and unprovoked flight, justified an investigative stop. The court concluded, therefore, that the gun Appellant had abandoned when pursued by police was admissible.

Appellant proceeded to a stipulated bench trial after which the trial court convicted him of the above crimes. On October 21, 2022, the court sentenced Appellant to a term of 2½ to 5 years of incarceration and a concurrent term

of seven years of probation. Appellant filed a motion for reconsideration which was denied by operation of law.[2]

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

[] Whether the motion court erred in denying [Appellant's] motion to suppress in the situation where the police did not have reasonable suspicion or probable cause to stop [Appellant] or conduct a search[?]

Appellant's Brief at 6.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012). Our scope of review of the suppression court's factual findings is limited to the

_____

[2] Appellant filed a timely post-sentence motion on October 27, 2022. More than 18 months later, on May 3, 2024, the clerk of court entered an order denying the post-sentence motion by operation of law. The failure of the clerk to enter the order denying the motion by operation of law on the 120th day after Appellant filed the motion resulted in a breakdown in the court system, which renders this facially untimely appeal timely. *See Commonwealth v. Perry*, 820 A.2d 734 (Pa. Super. 2003) (concluding that a breakdown in the court system occurred where the clerk of courts failed to enter an order indicating that the post-sentence motion was denied).

record from the suppression hearing. *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Evans*, 153 A.3d at 327 (citation omitted).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). There are three defined categories of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carries no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2007) (citation omitted). There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries of them. *Beasley*, 761 A.2d at 624.

Police pursuit for the purposes of an investigatory detention can be justified if officers have an objectively reasonable suspicion that crime is afoot. *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011). "Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances viewed through the eyes of a trained police officer." *Commonwealth v. Williams*, 980 A.2d 667 671 (Pa. Super. 2009) (citation omitted).

"Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa. Super. 2001).

"[M]ere presence in a high crime area [is] insufficient to support a finding of reasonable suspicion," but a court can "consider the fact that the stop occurred in a high crime area in assessing the totality of the circumstances." *D.M.*, 781 A.2d at 1163-64 (citation and internal quotation marks omitted). Furthermore, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion and headlong flight - wherever it occurs - is the consummate act of evasion." *Id.* at 1164. Accordingly, "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a *Terry*[*v. Ohio*, 392 U.S. 1 (1968)] stop[.]" *Id. See also Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017) (holding defendant's evasive and suspicious behavior in a high crime area, along with his unprovoked flight, gave officers reasonable suspicion that criminal activity

was afoot, justifying investigatory stop); ***Commonwealth v. Washington***, 51 A.3d 895, 898 (Pa. Super. 2012) (concluding that "nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence").

The presence of a concealed firearm alone is insufficient to establish reasonable suspicion; however, the surrounding circumstances, such as the suspect's conduct and presence in a high-crime area, combined with a firearm, may establish reasonable suspicion.  ***Commonwealth v. Hicks***, 208 A.3d 916, 938-39, 945 (Pa. 2019).

"[A] police officer need not personally observe the illegal or suspicious conduct which lead him or her to believe that criminal activity is afoot and that a person is armed and dangerous." ***In Interest of S.D.***, 633 A.2d 172, 174 (Pa. Super. 1993).  When an officer receives a tip, this Court must consider "the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed." ***Id.***  (citation omitted).

"[A] defendant has no standing to contest the search and seizure of items [that] he has voluntarily abandoned or relinquished because he has no privacy expectation in the property." ***Commonwealth v. Byrd***, 987 A.2d 786, 790 (Pa. Super. 2009) (citation omitted).  If the abandonment is coerced by unlawful police action, then the state-based constitutional principle of forced abandonment forbids using the property for evidentiary purposes. ***Id.***

at 791. However, a defendant is not entitled to suppression of contraband discarded during flight if police had reasonable suspicion to justify an investigatory stop. **McCoy**, 154 A.3d at 816.

Characterizing the interaction between Appellant and the officers as an investigative detention and analogizing this case to **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), Appellant contends that Officer Taylor and Officer James lacked reasonable suspicion to question or stop him. Appellant's Brief at 10-11. Appellant asserts that the anonymous 911 call was insufficient to provide the officers with reasonable suspicion that Appellant was engaged in criminal activity because Officer James testified that he did not know whether Appellant had a license to carry a firearm and he did not see a bulge in Appellant's waistband indicative of possession of a firearm. **Id.** at 14-15.

In **Hicks**, a remote camera operator conducting live surveillance at a gas station notified police that a patron of the station was in possession of a firearm, had shown it "to another patron, put [it] in his waistband, covered it with his shirt, and walked inside" the station's convenience store. **Hicks**, 208 A.3d at 922. While officers were *en route* to the station, Mr. Hicks emerged from the convenience store and reentered his vehicle. **Id.** "[B]efore Mr. Hicks could exit the parking lot, numerous police officers in marked vehicles" prevented Mr. Hicks from leaving. **Id.** Then, "[b]elieving that [M]r. Hicks had moved his hands around inside his vehicle, [an officer] drew his service weapon . . and ordered [Mr.] Hicks to keep his hands up." **Id.** Another officer restrained Mr. Hicks's arms while the first officer reached into Mr. Hicks's

- 9 -

vehicle and removed his handgun from its holster. *Id.* Officers then removed Mr. Hicks from his vehicle and handcuffed him. *Id.* They then "noticed the odor of an alcoholic beverage emanating from [Mr.] Hicks[,]" searched him, and recovered a bag containing a small amount of marijuana. *Id.* Upon investigation, the officers determined that Mr. Hicks had a valid license to carry a concealed firearm, therefore rendering his possession of the handgun and the manner in which he carried it lawful. *Id.* The Commonwealth nevertheless charged Mr. Hicks with DUI, possession of a small amount of marijuana, and disorderly conduct.

Mr. Hicks filed a motion to suppress the evidence asserting that the officers lacked reasonable suspicion sufficient to support an investigative detention. The trial court denied the motion and the Superior Court affirmed. *Id.* at 923. Our Supreme Court, reversed, however, holding that a police officer may not infer criminal activity, sufficient to support a *Terry* stop, merely from an individual's possession of a concealed firearm in public. *Id.* at 936-37. The court emphasized that the possession of a concealed firearm, where it may be lawfully carried, does not alone suggest criminal activity unless there are **additional articulable facts supporting reasonable suspicion** of criminal conduct. *Id.* at 937, 946. After finding that the officers lacked additional articulable facts supporting reasonable suspicion that Mr. Hicks was engaging in criminal conduct and that the officers seized Mr. Hicks "solely due to the observation of a firearm concealed on his person," the court

vacated the judgment of sentence and remanded the case for further proceedings. ***Id.*** at 951.

In the instant case, the suppression court distinguished ***Hicks***, and denied Appellant's motion to suppress. It explained:

> This [c]ourt had the opportunity to observe the demeanor of the witnesses and the benefit of viewing the body worn camera footage. Officers were presented with a verified radio call of an individual matching [Appellant's] description entirely brandishing a gun. As such, this is not the same factual scenario as in ***Commonwealth v. Hicks***.
>
> Here, a verified tip of this individual in this particular area with distinct clothing was confirmed upon police arrival. That individual is seen on the body worn camera acting extremely nervous and pacing back and forth with his hands up as the officers exit their vehicles. [Appellant] then flees before officers can get close to him.
>
> Based on the verified call, the matching description of [Appellant] and his behavior upon the officers' approach, there was reasonable suspicion to stop [Appellant] for further investigation. [Appellant's] flight was unprovoked. [Appellant] voluntarily abandoned the weapon during his unprovoked flight.

Suppression Ct. Op., 9/4/24, at 3.

The court specifically explained that Appellant had misplaced his reliance on ***Hicks*** because the officers in the instant case "faced circumstances involving more than [Appellant] simply possessing a firearm," and which gave rise to the officer's reasonable suspicion that Appellant was engaged in criminal activity. ***Id.*** at 7. We agree.

The record evidence shows that the 911 caller described a man matching Appellant's description brandishing a firearm in a way that indicated an impending confrontation in an area of Philadelphia know by an experienced

police officer as being an "extremely violent" high-crime area. N.T. at 5. The evidence also indicated that when Officers James and Taylor arrived at Appellant's location, Appellant was pacing back and forth and that, when instructed to stop moving and show his hands, he fled. *Id.* at 9-10. The Commonwealth's evidence—the 911 call, Appellant's presence in a high crime area coupled with his unprovoked flight—provided Officers James and Taylor with reasonable suspicion to support an investigative detention. *D.M.*, 781 A.2d at 1164.

In sum, we conclude that the record supports the suppression court's factual findings and that the legal conclusions drawn from those facts are correct. The court properly determined that the officers had reasonable suspicion to stop Appellant for further investigation and that Appellant voluntarily abandoned a weapon during his unprovoked flight. Appellant is, thus, not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2025